# CHARLESTON.

## Davis *v.* Webb.

Submitted September 20, 1898—Decided March 18, 1899.

1. SUPREME COURT OF APPEALS—*Jurisdiction—Detinue.*

　　In an action of detinue for the recovery of specific personal property, the damages recovered for the detention of the property will be added to the alternative value, named in the judgment, of the property recovered, in deciding the question of jurisdiction in this Court, under s. 4, c. 113, of the Code. (p. 8).

2. APPEAL—*Instructions—Reversal—Error.*

　　Whenever a correct instruction is refused, the judgment will be reversed, unless the appellate court can see from the whole record that, even under correct instructions, a different verdict could not have been rightly found, or unless it is able to perceive that the erroneous ruling of the court could not have influenced the jury. (p. 11).

3. INSTRUCTIONS—*Error.*

　　It is the plain duty of a trial court, when asked to do so by either party, to instruct the jury on questions of law involved in the case, when it can thereby aid them in reaching a right conclusion and proper verdict. (p. 12)

Appeal from Circuit Court, Kanawha County.

Action by Jane Davis against B. H. Webb. Judgment for plaintiff. Defendant appeals.

*Reversed.*

Flournoy, Price & Smith and McWhorter & Loewen-stein, for appellant.

J. W. Kennedy, for appellee.

McWhorter, Judge:

Jane Davis brought her action of detinue on the 22d day of July, 1897, before Justice George Ritter, against B. H. Webb, to recover two oxen, "Buck" and "Bright," of the value of thirty-seven dollars and fifty cents each, and one yoke and bows, of the value of one dollar and seventy-five cents, and claiming one hundred dollars damages for the detention thereof. The case was tried on the general issue by the justice August 6th, and judgment rendered for the plaintiff for the property, or the alternative value thereof, seventy-five dollars and fifty-six cents, and fifteen dollars and six cents damages, when defendant appealed the case to the circuit court of Kanawha County; and on the 2nd day of November, 1897, the case was tried before a jury of six upon the same pleadings, and the jury found for the plaintiff, and ascertained the value of the property to be thirty-seven dollars and fifty cents for each ox, and one dollar for the yoke and bows, aggregating seventy-six dollars, and sixty dollars damages for the detention of the property. Defendant moved the court to set aside the verdict because it was contrary to the law and the evidence, and grant him a new trial, which motion the court over-ruled, to which ruling of the court defendant excepted; and the court entered judgment upon said verdict against said defendant for the property, and against defendant and B. H. Newcomer, J. E. Chilton, I. Bryan, and J. H. Robinson for the said seventy-six dollars, the alternative value of the property, and said sum of sixty dollars damages so ascertained and assessed by the jury. On the trial of the case, defendant took two bills of exceptions, which were duly signed and made a part of the record; the first excepting to the ruling of the court in refusing to set aside the verdict and grant him a new trial, which bill set out all the evidence in the case; the other excepting to the ruling of the court in refusing to give to the jury instructions numbered one to six, inclusive, asked by defendant. Defendant obtained a writ of error and *supersedeas*, assigning as

errors the court's refusal to set aside the verdict and grant a new trial, rendering judgment upon said verdict, and in refusing to give to the jury the instructionns asked by defendant, to the prejudice of his rights.

The first question to be settled is the jurisdiction of this Court in the case. Appellee insists that the only matter in controversy in the case is the specific property sued for, or its alternative value, and cites Elliott, App. Proc. § 66, quoting the last clause: "This is so for the reason that the paramount issue is that of the right to the ownership or to the possession of the specific personal property; and damages, whatever their amount, constitute a mere incident of the principal issue." The writer was writing upon the statute of Indiana, and in the same section he says: "The language of the statute is very broad and comprehensive. There is neither limitation nor exception. No restriction is expressed or implied, for all actions for the recovery of specific personal property are declared to be within the jurisdiction of the appellate court. * * * Nor is it material what the amount of damages may be; for, irrespective of the element of damages, the jurisdiction is in the new tribunal if the action is for the recovery of specific personal property." We have no such statute. Section 4, chapter 113, of our Code, provides that "the appellate jurisdiction shall extend to civil cases when the matter in controversy, exclusive of costs, is of greater value or amount than $100." JUDGE GREEN, in *Railroad Co.* v.*Foreman*, 24 W. Va., at page 668, says, "The amount in controversy in this Court determines, it is true, the jurisdiction in this Court, and not the amount which may have been in controversy in the court below," and cites *Rymer* v. *Hawkins*, 18 W. Va. 309. What is the matter in controversy now here in this Court? Is it the possession or ownership of the specific personal property sued for, or its alternative value? It seems clear that it is a question of reversing or affirming a judgment of the circuit court for the aggregate sum of one hundred and thirty-six dollars, exclusive of costs, or for the recovery of property of the value of seventy-six dollars, and sixty dollars damages. While it may be true that the finding for damages may "constitute a mere incident to the principal issue," yet it is a very material part

of the judgment of the court, and is not costs. In *Lee* v. *Watson*, 1 Wall. 337, Justice Field, in delivering the opinion of the Court, says: "By 'matter in dispute' is meant the subject of litigation,—the matter for which suit is brought and upon which issue is joined, and in relation to which jurors are called and witnesses examined. * * * Reference must be had both to the debt claimed and to the damages alleged, or to the prayer for judgment." The plea in the case was a general denial of the unlawful detention of the property, and, of course, if the defendant sustained his plea, there would be no damages to the plaintiff. But the question of damages was a part of the litigation, and a matter of proof, as much as the main issue; and if plaintiff had failed to introduce testimony to prove damages, and had only recovered judgment for the property or its value, the judgment would have been adjudicated, as to damages, in any subsequent action to recover damages she might have been entitled to in the first instance. *White* v. *Van Houten*, 51 Mo. 577. *Neal* v. *Van Winkle*, 24 W. Va. 401 (Syl., point 1): "To give this court jurisdiction in a cause involving matters simply pecuniary, the record must show, not only that the party complaining has been prejudiced by the decree or judgment of the inferior court, but that the amount in controversy in this court exceeds the value of $100, exclusive of costs."

The instructions asked for by defendant and refused by the court are as follows; "(1) The court instructs the jury that the declarations and statements made by the plaintiff, Jane Davis, as to the ownership, should be considered by the jury in determining the title to the cattle in question. (2) The court instructs the jury that, in finding a verdict, they must consider the statements of the plaintiff, Mrs. Davis, to George Stevens, William Wooten, Anderson Pauley, Nettie Dunlap, and Henry Blake, as sworn to by them, that the cattle belonged to Tom Davis. (3) If the jury find from the evidence that the title to the property was in Mr. Davis at the time he delivered same to the defendant, Webb, they must find for the defendant. (4) The court instructs the jury that the plaintiff must have a preponderance of testimony in order to recover. (5) The court

instructs the jury that if they find from the evidence that plaintiff held out and represented to the community, by words or acts, that her said husband was the owner of the cattle in controversy, and that her said husband heretofore disposed of her like personal effects without her consent, but was ratified by her, and that said defendant, Webb, relied upon these representations and believed them to be true, and bought the said cattle, in good faith, as the property of Thomas Davis, then the jury should find for the defendant.    (6)    The court instructs the jury that if they believe from the evidence the calf purchased from William Hill was the mother of one of the steers in controversy, and that said calf was purchased before June 12, 1891, and that the plaintiff, Jane Davis, and T. A. Davis were then living together as man and wife, then it is immaterial whether the plaintiff, Jane Davis, helped to pay for said calf by sewing for Hill's wife, or giving them beans which she had raised on her husband's place.    The law as it was prior to June 12, 1891, gave to the husband, while he and his wife were living together as man and wife, the entire proceeds of her labor, and she could acquire no interest in or title to the steer which was the offspring of the calf purchased from Hill by reason of any part of the purchase price of the said Hill calf having been paid by her labor."

There was evidence tending to prove declarations and statements made by plaintiff concerning the ownership of the property which were adverse to her ownership, and also tending to prove the ownership in her husband, who sold the property to defendant.    Instruction No. 1 simply told the jury that they should consider such declarations and statements in determining the title to the cattle in question, assuming that it must have been proven to the satisfaction of the jury that plaintiff had made such declarations and statements.    Plaintiff, in her testimony, denied positively that she made them.    The instruction should have provided further, to be proper to be given, that such declarations and statements should be considered in case the jury believed from the evidence that they were made by the plaintiff.    Instruction No. 2 is subject to the same criticism, but more likely to mislead the jury than the first, as it provides that the jury must consider the

statements of the plaintiff, Mrs. Davis, as sworn to by the witnesses named; clearly indicating what weight to give to the testimony of said witnesses as to such statements. Without qualification, providing the jury believed such declarations and statements were made, both these instructions were properly rejected.

Instructions Nos. 3 and 4 were clearly right, and should have been given. In *Bank* v. *Waddill*, 27 Grat. 451, Judge Staples, in writing the opinion for the court, says: "It will not be disputed that whenever an erroneous instruction is given, or, what is the same thing, a correct one refused, the judgment will be reversed, unless the appellate court can see from the whole record that even under correct instructions a different verdict could not have been rightly found, or unless it is able to perceive that the erroneous ruling of the trying court could not have influenced the jury." In the case of *Nicholas* v. *Kershner*, 20 W. Va. 251, this was quoted with approval; and in *Wiley* v. *Givens*, 6 Grat. 277, it was held that, "an erroneous instruction having been given by the court below, the appellate court could look no further than to the propriety of the instruction given, and, if that was erroneous, the judgment would be reversed, and a new trial granted."

Instruction No. 5 would be good in case there was any evidence tending to prove that defendant knew of such representations being made by plaintiff as to the property belonging to her husband, and that he relied upon such representations, and believed them to be true, and bought said cattle, in good faith, as the property of the husband, because he so relied on them; but it does not appear that such representations were made to him, or that he even knew they were made. In his testimony he says nothing about it, and, while the representations so made by her were proper to be proven upon the issue as touching the ownership of the property, yet the instruction would be calculated to confuse and mislead the jury, unless there was some evidence upon which to base the last part of the instructions; and, there being none, it was properly rejected.

The sixth instruction is objected to because: "It does not propound the law correctly. Neither is it in accord-

ance with the facts proven. As between a husband and wife, even at common law, the husband could set apart and give to his wife personal property, and her title thus acquired would be good as against third parties as well as her husband." The whole evidence in this case, as well as the facts and circumstances, go to show that the ox "Bright" belonged to the said plaintiff, and was treated by her said husband as her ox, and that no claim was even made by him to said ox until after he had gotten out of the penitentiary, and went forcibly to take said oxen from the plaintiff to deliver them to Webb. The evidence was conflicting as to the ownership. The ox "Bright" was the offspring of a cow bought from William Hill when she was a calf, and for which the husband, Tom Davis, testified he paid two dollars and fifty cents, of which one dollar was paid in money, and one dollar and fifty cents paid in a shoat or hog. Plaintiff said she paid for the calf by making a dress for Hill's wife, and paid part in beans. Hill corroborated the husband, and said he knew nothing about the dress, and they raised their own beans; that Tom paid for the calf one dollar in money, and a shoat for one dollar and fifty cents. Plaintiff says: "If I am not mistaken, it will be 11 years in November since we bought the calf,—the mother of one of these steers, understand. The steers were only eight years old last spring." The question involving the ownership of the property were for the jury, and it was proper for the court to instruct the jury as to the law. In *Jones* v. *Reid*, 12 W. Va. 350 (Syl., point 1), it is held, "At law, a wife's earnings belong absolutely to the husband." This has been the law from time immemorial. I am glad to know this cruel and antiquated blot on our civilization was removed by statute in 1891. The second point in same case holds that: "When, by the husband's consent, the wife earns money, with the understanding and agreement between them that it is to be hers, and the rights of creditors do not intervene, it will, in a court of equity, be given her, as against the devisees and distributees of her husband."

Instructions 3, 4, and 6 properly propound the law, and should have been given. It is the plain duty of a trial court, when asked to do so by either party, to instruct the

jury on questions of law involved in the case, when it can thereby aid them in reaching a right conclusion and proper verdict. For the reasons herein stated, the judgment of the circuit court is reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had therein.

*Reversed.*