# CHARLESTON.

## Smith *v.* Parkersburg Co-Operative Association.

### Decided November 17, 1900.

1. Appeal—*New Trial, When.*
    Where a motion for a new trial is on the ground that the verdict was contrary to the evidence, and the motion is denied, the opinion of the trial court is, on such point, entitled to great respect in the appellate court, which will grant such new trial only in case there has been a plain deviation from right and justice.    (p. 238).

2. Mistake of Judgement—*Capacity of Counsel.*
    Mistake of judgment, or want of attention or capacity of counsel, afford no just or proper grounds for granting a motion to re-open a case.    (pp. 239, 240).

3. Judgment—*Relates to First Day of Term.*
    A judgment in any case, fully matured, so that it could be tried on the first day of the term, if it had been set for that day, relates to the first day of the term, and this rule applies to a judgment on attachment.    (p. 241).

4.  Attachment Lien—*Priority Preserved.*
> On the rendition of judgment on an attachment the lien of the attachment is merged in the judgment, and the priority of the lien thereby preserved.  (p. 250).

5.  Attachment—*Petition—Interest in Controversy.*
> Before a third party claiming an interest in attached property can oe permitted to file his petition under section 23, chapter 106, Code, and defend the attachment on its merits, he must show by his petition that he has an interest in the controversy. (p. 250).

Error to Circuit Court, Wood County.

Action by Lucy K. Smith against the Parkersburg Co-Operative Association.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

W. N. Miller, C. D. Merrick, and W. M. Straus, for plaintiff in error.

McClure, Forrer & McClure and Smith D. Turner, for defendant in error.

McWhorter, President:

This is an action of trespass on the case brought in the circuit court of Wood County by Lucy K. Smith against the Parkersburg Co-Operative Association, a corporation, to recover damages for personal injuries received by falling into an elevator shaft alleged to have been carelessly and negligently left open in the store room of the defendant company, plaintiff having gone into said store for the purpose of purchasing goods, which defendant was there offering and exposing to sale to the general public.   The action was commenced on the 26th of April, 1897, and on the 8th day of July following, plaintiff filed her affidavit for an attachment.   On the 12th day of July an order of attachment was issued from the clerk's office, and on the same day levied upon the stock of goods, etc., of the defendant, as set out in the return of the sheriff, and on the 9th day of August, the return day of the attachment order the same was docketed.   On the 24th of August the defendant appeared and had the writ of inquiry awarded at rules set aside, and demurred to the declaration and to each count thereof, and on the first day of November the parties appeared and the demurrer being considered was overruled, and the defendant entered its plea of not guilty.   On the

11th of December a jury was impaneled to try the issue, the trial was conducted from day to day until the 14th of December, when the jury returned a verdict for plaintiff, assessing her damages at two thousand five hundred dollars. On the 16th of December defendant moved the court to quash the affidavit for attachment filed July 12, 1897, because the facts alleged in said affidavit as ground for the issuance of said attachment were insufficient and for other reasons appearing upon the face of the attachment and affidavit, and on the 17th of December the defendant withdrew its motion to quash the affidavit and attachment entered on a former day of the term, and moved the court to set aside the verdict of the jury and grant a new trial, which motion was overruled and judgment entered upon the said verdict, and judgment was entered upon the said attachment and order for the sale of the goods so levied on under said attachment unless the said judgment should be paid within ten days from the date of said order. On the 18th day of December plaintiff filed an attachment bond in the penalty of ten thousand dollars in the case, and on the same day Levin Smith, trustee, asked leave to file his petition contesting the validity of the order of attachment sued out in the case, and claiming the property on which same was levied, by virtue of a deed of assignment from the said corporation defendant, dated on the 9th day of December, 1897, which petition was verified by said trustee's oath, and upon the filing of said petition said trustee moved the court to quash the attachment in the case sued out on the 12th of July, and to quash the affidavit on which it was sued out, and the levy of said attachment, and said trustee filed his bond for costs, and on the 4th day of January, 1898, the defendant filed its petition to renew the motion to set aside the judgment entered in the case and for a new trial, accompanied by the affidavit of J. J. Ogden, the president of said defendant company, in support of said petition, and on the 14th of January plaintiff tendered and filed in opposition to said motion the affidavit of C. T. Caldwell, and defendant filed counter-affidavits of W. N. Miller, J. H. Wise, W. M. Cox and Levin Smith, in further support of said motion, and on the 15th day of January plaintiff filed the affidavit of W. E. McDougle and the additional affidavit of C. T. Caldwell in opposition to said motion. And on the 11th of February, 1898, defendant presented to the judge of said court its ten several bills of exceptions numbered 1 to 10 inclusive, which were

signed and made part of the record, and on the 15th day of September, 1898, the court having considered the motion made by defendant to set aside the judgment rendered on the attachment and to permit it to renew the motion to quash said attachment and the affidavit upon which the same was founded, and being of opinion that said judgment was properly entered upon said attachment, overruled the motion and refused to set aside the judgment entered on said attachment and to quash the order of attachment, and said affidavit, to which rulings of the court the defendant excepted, and the defendant desiring to controvert the existence of the grounds for the attachment as stated in said affidavit, tendered its plea in abatement in writing, dated December 30, 1897, to the filing of which plaintiff objected, which objection was sustained, and the plea refused, and defendant excepted. And the court also overruled the motion of Levin Smith, trustee, entered at a former term to quash the attachment and the affidavit on which it was founded, and refused to disturb the judgment thereon, to which rulings of the court said Levin Smith, trustee, objected and excepted. And on motion of said trustee, who had filed his petition to contest the validity of said attachment and to try the right of property on which attachment was levied, it was ordered that the validity of the attachment and the right of said property be tried by jury, and that upon the trial the affirmative of said issue should be with the plaintiff. And on the 27th day of December, 1898, the plaintiff and petitioner appearing agreed that the matters of law and fact arising upon said petition be submitted to the court, each party waiving a jury, and after part of the evidence was heard the petitioner moved that he be allowed to amend his petition by inserting the words, "and the said petitioner desiring to controvert the existence of the grounds for the said attachment stated in the affidavit of the said Lucy K. Smith, filed therefor, denies the existence of said grounds for said attachment," to which plaintiff objected, the objection was overruled, the amendment made and plaintiff excepted. The plaintiff then moved that the trial of the case be continued, and moved that said petition as so amended be stricken out, and asked that the court in hearing said motion take into consideration the entire record, except the bills of exceptions filed in the case, which motion was objected to by petitioner, argued and submitted, and on the 5th day of January, 1899, the court having considered plaintiff's said

motion to strike out the petition, the same was overruled, and plaintiff excepted. On January 12, 1899, the parties appeared, and agreed that the matters of law and fact arising upon said petition be submitted to the court, each party waiving a jury, and having heard the evidence the court ascertained that petitioner, Levin Smith, trustee, had no title to or lien upon or any interest in the property maintained in said petition as levied upon in said case, which was superior to the lien of plaintiff, but had title to, lien upon and interest in any property or proceeds thereof that might remain after the satisfaction of the said debt of Lucy K. Smith, and that as to so much of said property or the proceeds so levied on by virtue of said attachment as might be necessary to satisfy her debt, said petition was dismissed, and that plaintiff recover her costs against said trustee to be paid by him out of the trust fund in his hands, to which ruling of the court said Levin Smith, trustee, excepted. On the 11th of February, 1899, Levin Smith, trustee, presented his five several bills of exceptions, designated respectively, "A", "B", "C", "D", and "E", which were signed and made a part of the record. The defendant corporation and Levin Smith, trustee, asked and obtained a writ of error, assigning on the part of the defendant fourteen alleged errors in which the petitioner Smith, trustee, joins, and six assignments by said Smith. The first assignment is that the court erred in overruling defendant's demurrer to the several counts in the declaration of plaintiff. As appellant makes no mention of it in its brief and points out no defect, and I find none patent in the declaration, I conclude that the demurrer was properly overruled.

"Second. The court erred in overruling the defendant's motion to set aside the verdict of the jury, and grant it a new trial, as set forth in defendant's bill of exceptions and certificate of evidence No. 1. Briefly stated the evidence shows that the plaintiff, at noon day, with her eyes wide open, but covered with a veil, in a storeroom, where she had frequently been, intruded herself through a narrow opening behind a barricade of boxes and barrels, and deliberately walked into an elevator shaft in the extreme back end of the storeroom, where customers were not invited and not expected to go, whereby she sustained her injuries. Even if any negligence could have been imputed to the defendant, which the evidence shows to the contrary, the plaintiff was guilty of contributory negligence and was not entitled

to recover." This is rather a remarkable assignment of error in view of the facts as they appear in the testimony as given by the witnesses. The clerk asked plaintiff if she did not wish to buy a nice ham, and after speaking in high praise of their hams and she having intimated that she would like to buy one, the clerk started back, leading the way to the back part of the store where the hams were hanging against the wall. The most natural thing to be imagined was that the customer would go back to view the articles from which she was to choose, as they hung upon the wall, and point out to the clerk who was waiting on her the article that she thought would suit her. The hams were then on exhibition and that was the place for a customer to examine them and select his choice from the lot, and it was the plain duty of defendant to keep that part of the floor in safe condition so that when a customer should find it necessary to go back there to choose from a variety, the article which best suited him, he could do so without danger from death traps in the floor. It is not expected that the back part of the store where potatoes and other vegetables and meats are kept will be, as tidy and cleanly as the front part of the store, and that part where the drygoods are kept, but customers could not reasonably expect to find unguarded holes in the floor into which there was danger of falling. It is, as stated by one of the defendant's witnesses, "thirteen feet exactly" from the end of the counter back to the elevator, and it was on the wall back of the counter that the hams were hanging. The elevator shaft was wholly unguarded, simply a square hole cut in the floor six by six and one-half feet, and no sign of warning put up to be seen by the unwary, and no word was spoken to plaintiff notifying her of danger. After the accident defendant did what it should have done before, placed a guard around the dangerous hole. Defendant cites several cases to show that defendant could not be held liable, but the cases cited do not come within the purview of the facts in the case at bar. *Pierce* v. *Whitcomb*, 48 Vt. 127, is cited, in which case plaintiff went with defendant into defendant's granary to get some oats, it was dark in the granary, defendant had gone out to get a measure and while he was gone, instead of remaining where defendant had left him in a safe place, plaintiff from curiosity or other motive, wandered about the floor, and fell through an aperture and was injured, and it was rightly held that defendant was not liable. Also *Sweeney* v. *Old Colony*

*R. R. Co.*, 10 Allen 368, is cited where it is held that "a licensee who enters premises by permission *only,* without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstacles or pitfalls. He goes there at his own risk and enjoys the license subject to its concomitant perils," but in the same connection and paragraph it is further said: "No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated or occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter therein." And further in the same case, it is said, "The general rule or principle applicable to this class of cases is, that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement or inducement, either express or implied by which they have been led to enter thereon." Also the case of *Hart* v. *Grennell,* 122 N. Y. 371, is cited, where the plaintiff went in to buy oil and followed the clerk to the rear of the store where oils and heavy goods were kept. In an open passage-way back of a packing counter was a truck used to move goods in the store. After paying for the oil, plaintiff in turning around, tripped over the handle of the truck and was injured. "The store was well lighted, the truck was in plain sight and was seen by plaintiff." Defendant was held not liable. The first syllabus of that case is, "It seems that persons occupying real property for business purposes, who invite and induce others to visit their premises, are required to use reasonable prudence and care to keep the same in such condition that those who visit them will not be unreasonably and unnecessarily exposed to danger." The fourth syllabus in *Sigler* v. *Beebe,* 44 W. Va. 587, holds that, "where a motion for a new trial is made on the ground that the verdict was contrary to the evidence, and the motion is denied, the opinion of the court which tried the cause is, on such point, entitled to great respect in the appellate court, and the appellate court will grant such new trail only in case of a plain deviation from right and justice.

Third assignment, that the court erred in refusing to exclude the plaintiff's evidence from consideration of the jury and direct a verdict for the defendant, as set out in bill of exceptions No. 2. *Carrico* v. *Ry. Co.,* 35 W. Va. 389, (14 S. E. 12) syl. pt. 3: "A motion by defendant to exclude the plaintiff's evidence upon the ground that it is not sufficient to warrant a verdict in his favor will not be granted if there be any evidence which tends in any degree, however slight to prove the plaintiff's case. If it tend to prove the plaintiff's case in any degree whatever, the case cannot be withdrawn from the jury. The motion can never prevail or be sustained merely because the court may think the weight of evidence is against the plaintiff." *Poling* v. *Railroad Co.,* 38 W. Va. 645, (18 S. E. 379), 24 L. R. A. 215, syl. pt. 6; *Bennett* v. *Perkins,* 47 W. Va. 425, (35 S. E. 8).

Fourth, that the court erred in refusing to set aside the judgment on the verdict and to permit the defendant to renew its motion to set aside the verdict of the jury and grant it a new trial as set forth in bill of exceptions No. 3. This assignment is based upon affidavits of J. J. Ogden, W. N. Miller, J. H. Wise, W. M. Cox, and Levin Smith in an attempt to show that C. T. Caldwell, attorney for the defendant, was guilty of misconduct in conducting the defense of the case and permitted judgment to be entered upon the verdict of the jury as by default, that while he made a motion to set aside the verdict and have a new trial granted, it was done in a merely perfunctory manner, and he made no effort to secure that end. W. N. Miller, one of the affiants, was employed about the 15th of December, 1897, by a number of creditors of the defendant corporation to assist said Caldwell in the further defense of said action as stated in his affidavit, and if necessary to prosecute a writ of error to the supreme court of appeals. This is an effort on the part of the creditors, acquiesced in by the defendant, after a full and fair trial of the case, defended by an able, competent and skillful attorney, to secure a new trial under the management of different counsel. In opposition to said motion and said affidavits, were filed with affidavits of C. T. Caldwell and W. E. McDougle, and the additional affidavit of C. T. Caldwell. The chief complaint of the conduct of C. T. Caldwell seems to be that contained in the affidavit of W. N. Miller, who was employed by the creditors of defendant, and also by the defendant after the trial of the case, who together with said Caldwell had entered a

motion to quash the affidavit for attachment and the attachment, and which Caldwell afterwards withdrew and judgment was entered upon the attachment. Miller admits in his affidavit that it was the opinion of both Caldwell and himself that the attachment would not hold against the assignment inasmuch as no bond had been given, but claims that it had been fully determined between Caldwell and himself, inasmuch as it was the opinion of both that the affidavit upon which the attachment was founded was not sufficient, that the motion to quash the affidavit should be urged before the court, states that affiant and Caldwell together appeared in court when Caldwell presented said motion to the court, the counsel for defendant afterwards, on the 17th of December, 1897, appeared and withdrew said motion to quash the affidavit and attachment and the court overruled the motion to set aside the verdict of the jury and grant a new trial and entered judgment on the verdict, and also upon the attachment and ordered the sale of the goods levied upon by virtue of the attachment. The court had before it all the affidavits filed for and against said motion and had complete knowledge of the proceedings which had taken place in open court, it had all the parties before it, and did not find that attorney Caldwell had acted in bad faith toward his client, he had informed the superintendent of the defendant company of all that had been done, and asked the superintendent if they wanted the case taken to the Supreme Court. He replied he did not know what they wanted done, or what they would do; that the whole matter was in the hands of the assignee, Mr. Smith. This was not a judgment by default, the case had been several days on trial, and the defense on the general issue in the case had been conducted at least with reasonable skill and ability. It is true no motion had been made to test the validity of the attachment or the affidavit upon which it was founded until afer the return of the verdict of the jury. In *Post* v. *Carr,* 42 W. Va. 72, it is held that "after judgment by default has been entered up in court, or an order of inquiry of damages has been executed, under section 46, chapter 125, Code, it cannot be set aside, and a defense to the action be allowed, under section 47 without good cause being shown therefor, and such good cause can only appear by showing fraud, accident, mistake, surprise or some other adventitious circumstance beyond the control of the party, and free from neglect on his part." In *Witters* v.

*Sowles,* 31 Fed. Rep. 5, syl. pt. 2, it is held that "no mistakes of judgment or want of attention or capacity of counsel, afford any just or proper grounds for granting a motion to open a case." *Rubber Co.* v. *Phelps,* 8 Blatch. (U. S.) 85; *Loom Co.* v. *Higgins,* 13 *Id.* 349, and in *Jacob* v. *McLean,* 24 Mo. 40, syl.: "Where a cause is upon the day of trial submitted to the court by plaintiff's counsel upon proofs presented by him, and the court finding for plaintiff gives judgment accordingly. Held, the defendant is not entitled to have this judgment set aside for the reason that his counsel, at the time the case was called and submitted, was absent in attendance as counsel in another case in another court. 2. The Supreme Court will not in such case interfere with the discretion of the lower courts." *Haight* v. *Green,* 19 Cal. 113, is a similar case, where the counsel of defendant knew of and consented to the setting of the case for trial on a certain day, then two or three days before the trial went into another county to try another case without making any agreement in respect to the first case, in which on the day fixed plaintiff had judgment, no one appearing for defendant except to state the fact of the attorney's absence and to ask a postponement, and the supreme court refused to review the action of the trial court in refusing to set aside the judgment because of the absence of said attorney. Also *Welch* v. *Challen,* 31 Kan. 696; *Jones* v. *Leach,* 46 Iowa 186. These cases are much stronger than the case at bar, where the counsel of the defendant was present from the beginning of the trial contesting the case. If a case is to be opened up to be reheard for retrial every time a new attorney appears who has been employed by some one supposing himself interested in the result of the suit, whether a party to the suit or not, where would be the end of the litigation?

It is claimed that the court erred in giving to the jury plaintiff's instructions No. 1 as set forth in bill of exceptions No. 4, and No. 2, as set out in bill of exceptions No. 5, and No. 3, as shown in bill of exceptions No. 6, and in refusing to give defendant's instructions Nos. 2, 3, 5 and 7, as set out in his exceptions Nos. 7, 8, 9 and 10 respectively. The plaintiff's instructions given which were objected to, Nos. 1, 2 and 3, are as follows: "The jury is instructed that if they believe from the evidence that the defendant, the Parkersburg Co-Operative Association, kept a stock of goods in a storeroom on Market

street, between 7th and 8th streets, as set forth in the declaration, and that in such store room the defendant kept goods and merchandise for sale to the general public, then the legal obligation rested on the said defendant Co-Operative Association to take reasonable precautions to prevent injury to all persons who might come in to its said storeroom for the purpose of purchasing its goods, and if the jury believe from the evidence that the plaintiff came into the defendant's said storeroom with the intention and for the purpose of purchasing goods from the said defendant, and whilst examining said goods with a view of purchasing the same, and with such care as an ordinarily prudent person would exercise under similar circumstances, she fell through an opening and hole in the floor of said storeroom in consequence of the neglect of the defendant to exercise such proper care for her protection from danger, incident to said hole and opening in said floor, then the jury will find for the plaintiff."

2. "The jury are further instructed that storekeepers impliedly invite the public to enter their place of business, and they must exercise an ordinary degree of care to keep their premises in a safe condition, and where a customer is injured by accidentally falling into a negligently exposed hole or opening in the floor in the building where the storekeeper exposes his goods for sale, then the storekeeper is liable in the absence of negligence on the part of the person injured, and if the jury believe from the evidence that on the 13th day of January, 1897, the defendant was a storekeeper and was offering its goods and merchandise for sale at that time to the general public, and that the plaintiff entered the storeroom of the defendant with the view to purchasing its goods, and whilst she was so there viewing said goods, and was exercising that care which an ordinarily prudent person would exercise under similar circumstances, and that she fell through a hole or opening in the floor of the defendant's storeroom, and that said hole was not guarded or protected, but was negligently left open and unprotected, and from said fall plaintiff received injuries to her person, then the jury will find for the plaintiff."

3. "And if the jury believe from the evidence that the defendant was engaged in selling goods on the 13th day of January, 1897, in a storeroom situated between 7th and 8th streets in the city of Parkersburg, Wood County, West Virginia, and that

they had in their said storeroom merchandise and goods, which they were offering for sale to the general public, then there was an implied invitation to the general public to enter their said storeroom for the purpose of purchasing their goods; and if the jury further believe from the evidence that the plaintiff did then and there enter said storeroom for the purpose of examining to purchase the goods of the defendant, and that she was not aware of the existence of a hole or opening in the floor of the said building at the time aforesaid, and if they further believe from the evidence that there was a hole and opening in the said floor, and that the same was knowingly left unguarded and unprotected by the defendant, and that no notice was given to plaintiff of said opening in said floor, and by the exercise of ordinary care she could not and did not discover same in time to avoid danger, and that she whilst examining the goods of the defendant for the purpose of purchasing the same used that ordinary care which a person of common prudence would use under similar circumstances in the storeroom and fell through the said opening and received injuries on account of said fall, then the defendant is liable to her for such injuries in such amount as the jury may determine, and they will so find." Tne objection raised to these instructions is that the court omitted to enumerate among the facts which the jury might find, a fact which it contends there was evidence tending to prove, to-wit: that the part of the store where plaintiff had gone to look at the hams and where she fell into the elevator shaft and received her injuries was a part of the premises kept exclusively for private uses, such as storing goods and receiving goods and moving them up and down on the elevator, and not intended for customers, and that implied right to protection of a customer in the part of the store where the goods were weighed, measured and sold did not extend to that part of the store, and counsel cites *Woodell* v. *Improvement Co.,* 38 W. Va. 49, and *McCreery* v. *O. R. R. R. Co.,* 43 W. Va. 110, in support of the objection. There is no dispute as to the fact that there was no inhibition of customers using the whole floor at their pleasure; that none were prohibited from going to the part of the floor where plaintiff received her injuries; that no danger signal was displayed; that no person was told or advised not to go back there where much of the stock of vegetables and meats was kept and where the hams were displayed upon the wall and where

customers would naturally go to examine potatoes and other vegetables and meat, and where this man trap, the elevator shaft, simply a square hole in the floor, wholly unmarked and unguarded, into which any unsuspecting customer was liable to walk at any time, especially in viewing the hams on the wall, there was no evidence to gainsay these facts.

The instructions two, three, five and seven offered by the defendant and refused by the court, are as follows:

2. "The court instructs the jury that the rules that the keeper of a public place of business is bound to keep his premises in a safe condition, and to use ordinary care to avoid accidents or injury to those properly entering the same on business, does not apply to such parts of the building as are used for other than the general business conducted on said premises, and unless a party is induced to enter into that portion of the building used for other purposes than the general business conducted in said building by the invitation or allurement of the owners or occupiers of said building, then the said persons so injured cannot recover from the owner or occupier of said building."

3. "The court instructs the jury that if they believe from the evidence that the plaintiff entered the storeroom of the defendant, and that after entering the same she went to a portion of the room that was used by the defendant as a place to store its goods and not by the public in general, that said plaintiff after she left the portion of the storeroom which was used as a public store was a mere licensee, and if you further believe from the evidence that without any enticement, allurement or inducement being held out to the plaintiff by the owner or occupier of said building, she entered the portion of said building that was used by the public in general, and that in so entering she fell into the elevator shaft and was injured, then the court instructs the jury that she cannot recover for said injuries in this cause, and you should find for the defendant."

5. "The court instructs the jury that if you believe from the evidence that the plaintiff entered the storeroom of the defendant, and that after entering said storeroom she went to another portion of said building which was used by the defendant and to which the public were not invited to go, and that she of her own accord and not upon invitation of the defendant, that in so doing she must exercise ordinary care and caution, and that no recovery can be had by the plaintiff if her negligence in any

degree contributed to the injury received by her falling into an elevator shaft, unless the defendant, being aware of the plaintiff's danger and having the opportunity to avert it, fails to use ordinary care and caution so to do."

7. "The court instructs the jury that if they believe from the evidence that the elevator shaft into which the plaintiff fell was in the rear part of the building and used as a freight elevator, and in a place unfrequented by customers and a place to which customers were not invited, and that at the time the accident happened the plaintiff was back in said part of the store without invitation, and that she was wearing glasses, and further believes that she could not see as well with the glasses as she could without them, and further believe that she had a veil on her face at the time, and if the jury further believe that a person with good eyesight, exercising a reasonable degree of care, could have seen said hole, then the jury is further instructed that the plaintiff was guilty of contributory negligence, and the jury must find for the defendant."

These instructions are asked on the theory that the part of the store where the hams were hanging on the wall was a part used exclusively for other purposes than for the public generally, and where customers were not invited to go and had no business, and where in going a customer would be a mere licensee.

Instruction No. 3, as set out in the record, would not be proper, however strong the evidence might be to prove that fact, as it will be seen to read after the word "licensee," "and if you further believe from the evidence that without any enticement, allurement or inducement being held out to the plaintiff by the owner or occupier of said building, she entered the portion of said building that was used by the public in general and that in so entering she fell into the elevator shaft and was injured, then the court instructs the jury that she cannot recover for said injuries," etc. This instruction in the form offered is clearly wrong and was properly rejected. There was something of an attempt to prove that the part of the store back of the meat counter, the end of which counter was within thirteen feet of the elevator shaft, was intended exclusively for storing goods and for private purposes, and was not intended for customers. The manager of defendant corporation himself, Mr. Wise, testified that the hams were exposed upon the wall for

customers to look at and examine if they saw fit. Customers were not prohibited from going back, and no notice of warning was posted or given in any way, nor was plaintiff given a word of warning when she went back to look at the hams as they were exposed on the wall for examination by customers. The jury must be credited with at least a reasonable degree of intelligence, the panel is usually made up of practical men, and the jury in this case viewed the arrangement of the store and the premises. Could the jury in any event have rightly found any other verdict under the evidence? From the whole record I cannot see how the finding could have been different if the plaintiff's instructions one, two and three had been refused, and defendant's two, three, five and seven had been given, and I cannot think that the defendant was prejudiced either by the giving of plaintiff's or the refusal of defendant's instructions. In *Davis* v. *Webb,* 46 W. Va. 6, (33 S. E. 97), syl. pt. 2, it is held that: "Whenever a correct instruction is refused, the judgment will be reversed, unless the appellate court can see from the whole record that, even under correct instructions, a different verdict could not have been rightly found, or unless it is able to perceive that the erroneous ruling of the court could not have influenced the jury." And in *Nicholas* v. *Kershner,* 20 W. Va. 251, (syl. pt. 10), it is held that "where an erroneous instruction has been given to the jury, the presumption is, that the exceptor was prejudiced thereby, and the judgment will be reversed for this cause, unless it clearly appears from the record of the case that the exceptor could not have been prejudiced by the giving of such erroneous instruction."

The twelfth assignment is that the court erred in its judgment of September 15, 1898, holding that judgment was properly entered upon the attachment, and refusing to set the same aside and to permit defendant to renew its motion to quash the order of attachment and the affidavit. This was a motion made after the rendering of the judgment on the attachment in December, 1897, and it is claimed that the court did not exercise a sound judicial discretion in refusing to set aside the judgment on the attachment and the judgment entered on the verdict of the jury. This has been discussed in the treatment of the second assignment. The trial court heard the motion on the affidavits filed in the case touching the matter, and on its knowledge of everything that occurred in court and in the conduct of the trial, and

overruled the motion after due consideration, there having been a full and fair trial. A motion had been made after the verdict of the jury was returned to set aside the verdict of the jury and grant a new trial and to quash the attachment and affidavit, and afterwards the motion to quash was withdrawn by the defendant, and the court properly overruled the motion to set aside the verdict and grant a new trial. The thirteenth assignment is that the court erred in its judgment of September 15, 1898, in refusing to allow the defendant to file a plea in abatement controverting the existence of the grounds for an attachment. This was a matter in which the court exercised a sound discretion. The defendant had chosen to make the pleadings and contest the case for several months, closing with a long tedious trial occupying several days, knowing all about the attachment and making no defense to it, except the motion to quash, which was made and withdrawn after the trial of the case. The plea in abatement should have been filed before the judgment on the attachment. The petitioner, Levin Smith, trustee, assigns as error the overruling of his motion to quash the attachment and affidavit. The assignee would be in no better position to plead than the defendant assignor. If the defendant had not the right to have the judgment on the attachment opened up and reheard, and was bound by the judgment, the assignee taking the assignment with full knowledge of the attachment had no rights in the premises which the defendant had not. It is insisted by appellant that no bond being given at the time of the suing out of the attachment, under section 9, chapter 106, Code, the lien of the attachment ceased and determined from the date of the sale or assignment. In *Bowlby* v. *DeWitt,* 47 W. Va. 323, (34 S. E. 919), syl. pt. 1, it is held: "An attachment is a lien on personal estate from levy, though no bond be given to authorize the officer to take possession, and one purchasing of the debtor with notice of the levy takes subject to it," and syl. pt. 3, same case, holds: "The title of one who purchases of an attachment debtor, property levied under it with intent to defeat such levy is void as to it." There is no pretense that the purchaser or assignee, Levin Smith, had no knowledge of the attachment and levy thereon at the time the deed was made to him. Indeed the record shows and it is admitted that he had full notice of it, and there can be no doubt that the purpose of the assignment was to defeat the levy of the attachment. The trust deed of

December 9, 1897, introduced by the petitioner, the assignee, to establish his right to the property not only makes no mention of plaintiff among the creditors of defendant corporation, but the certificate of acknowledgment of the notary to said deed shows the deed was written originally (after mentioning rent and taxes as preferred) "and also all the debts of said party of the first part *pro rata,*" and the words "now existing" interlined after the word "part" in that just quoted, so that it reads, "All the debts of said party of the first part now existing *pro rata,*" evidently intending to exclude therefrom, if possible, the liability of the said defendant corporation to the plaintiff, which was then unliquidated damages, but liable to be ascertained, as they were within a few days. "Where an attachment is served, a lien on the property, is created, which nothing subsequent can destroy, but the dissolution of the attachment. It is said to be beyond the power of a state legislature to pass an act annulling it, and as to the defendant, though as we have just seen, his power of alienation, subject to the attachment, is not impaired, yet no subsequent act of that description on his part can defeat the attachment." Drake on Attach., sec. 224, and cases cited.

Petitioner Smith's second assignment, that the court erred in the judgment of January 12, 1899, that petitioner had no lien upon or interest in the property mentioned in his petition as levied upon in said action, which was superior to plaintiff's lien, except after the satisfaction of plaintiff's alleged debt, and in dismissing said petition as to so much of the property, or the proceeds thereof, so levied on by virtue of plaintiff's attachment as might be necessary to satisfy her debt, involves all the questions raised by the further assignments of error of said petitioner Smith. It is insisted that the assignment to the assignee for the benefit of the creditors being prior to the judgment on the attachment, the lien of the attachment ceased the moment the transfer was made, and that the judgment lien does not by statute relate to the first day of the term except upon realty. The statute is only declaratory of the common law, so far as the judgment lien on real estate is concerned, but it does not change the rule of the common law as laid down in section 441, Bl. on Judgts. "It was the rule of the common law (and this rule still obtains in some of the states) that the judgments of a court of record all relate back to the first day of the term, and

are considered as rendered on that day, and therefore their lien will attach to the debtor's realty from the beginning of the term, and will override a conveyance or mortgage made on the second or any succeeding day, although actually prior to the rendition of the judgment. This general principle of the common law, like many others, is of such remote antiquity, and so long recognized without dispute, that the reasons and policy on which it was founded are in a great degree left to conjecture." This rule has always been recognized in Virginia, in cases matured for a term and ready for judgment on the first day of the term, and is so recognized in this State. In *Dunn v. Renick,* 40 W. Va. 349, after quoting Judge Tucker in *Dew v. Judges,* 3 Hen. & M. 27, "The term session, when applied to courts, means the whole term; and in legal construction the whole term is construed as but one day, and that day is always referred to the first day or commencement of the term." JUDGE BRANNON says, "I hardly think that because our statute contemplates adjournment from day to day, and provides that each day's proceedings shall be separately recorded and signed by the judge, it cuts up the term into separate days, and individuates each day from another and changes the common law rule. By reason of this rule that the whole term is one day, the common rule was that a judgment rendered on any day has relation to, and is a judgment of, its first day. Tidd Prac. 547; 1 Lomax Dig. 287; Black. Judgts. s 441; 2 Freem, Judgm. s. 369; *Farley v. Lea,* 32 Am. Dec. 680. This doctrine or rule had been always recognized in Virginia before we had a statute, but is now embodied in a statute, as regards the effect of the judgment as a lien. Code, chapter 139, section 5; *Society v. Stannard,* 4 Mumf. 539; *Coutts v. Walker,* 2 Leigh 268; *Skipwith v. Cunningham,* 8 Leigh 272; *Withers v. Carter,* 4 Grat. 418." It is contended that "had the case before the court been set for trial on the first day of the term judgment could not have been rendered on that day for the record shows that three days were required for the taking of testimony and considering the verdict." The question is not whether a case is set for trial on the first day, or whether if a trial is commenced it could be completed and judgment rendered on that day, but was the case matured for trial and capable of being tried on that day? Wherever a case is matured, so that it can be tried on the first day of the term, if set for that day, then judgment might be rendered

on that day. The case at bar was ready for trial not only upon the general issue, but upon the attachment. In *Withers* v. *Carter,* cited, Judge Baldwin says: "The rule applies to all cases in which the judgment might have been rendered on that day, but not to a case in which it could not have been then rendered." *Coutts* v. *Walker,* before cited, 1 syl.: "A judgment has relation to the first day of the term at which it is rendered, and this relation is allowed in equity as well as at law." *Bank* v. *Distilling Co.,* 41 W. Va. 530 (533) ; *Yates* v. *Robertson,* 80 Va. 475; *Hockman* v. *Hockman,* 93 Va. 455; *Building & Loan Assn.* v. *Reed,* 31 S .E. R. 514 (Va.) On the redemption of the judgment on the attachment the lien of the attachment was merged in the judgment and order of sale of the property levied upon, and the priority of the lien was thereby preserved. Drake on Attach., s. 224; *Bagley* v. *Ward,* 37 Cal. 121; *Lynch* v. *Crary,* 52 N. Y. 181; *Speelman* v. *Chaffee,* 5 Col. 247; 1 Wade on Attach. s. 29. The term of court began on the 15th day of November, 1897, to which time the judgment on the attachment would relate, therefore the assignee, Levin Smith, became the purchaser of the attached property after the date of the judgment on the attachment, as well as that on the verdict, became effective, and was privy in estate with the judgment debtor, his vendor, hence bound by the judgments. "It is well settled that a judgment is conclusive, not only upon those who were actual parties to the litigation, but also upon all persons who are in privity with them. This is not only a doctrine of our own law, but also a principle of general jurisprudence, as appears from the rule of the Roman law that 'the plea of *res adjudicata* is available against him who has succeeded to the rights of ownership of the person who suffered the judgment.' " 2 Black on Judgts. s. 549; *Bensimer* v. *Fee,* 35 W. Va. 15, (25). Before a third party claiming an interest in the property attached can be permitted to file his petition under section 23, chapter 106, Code, and defend the attachment on its merits, he must show by his petition that he had an interest in the controversy. *Smith* v. *Hunt,* 2 Rob. 206; *Crim* v. *Harmon,* 38 W. Va. 596; *Chapman* v. *Railroad,* 26 W. Va. 299. The third assignment of error by said trustee Smith is that the court erred in permitting plaintiff to introduce in evidence on the trial of the issue made upon the trustee's petition only a part of the record in her action at law, as set out in his bill of exceptions No. "B" which included the

'certificate of evidence and facts proven on the trial of the case and his fourth, fifth and sixth assignments are for alleged errors in excluding certain questions propounded by petitioner to his witnesses touching the merits of the attachment and sufficiency of the affidavit for attachment. There is no reversible error in the judgment of the court, and the same is affirmed.

*Affirmed.*