Roy K. Morris

*v.*

Forest E. Sevy, *Justice, etc.*

(No. 9826)

Submitted October 1, 1946. Decided December 3, 1946.

332

*Salisbury, Hackney & Lopinsky, Samuel D. Lopinsky* and *Jackson D. Altizer*, for plaintiff in error.

*Ira J. Partlow*, Attorney General and *Kenneth E. Hines*, Assistant Attorney General, for defendant in error.

FOX, JUDGE:

This is a proceeding in prohibition instituted in the Court of Common Pleas of Kanawha County, seeking to prohibit Forest E. Sevy, a Justice of the Peace of said county, from further proceeding in the prosecution of a criminal charge against the petitioner, Roy K. Morris, then pending before him, and based upon an allegation that he permitted the playing of a juke box or other musical instrument of like character at his place of business, used in the retail sale of nonintoxicating beer, after eleven o'clock p. m. on week-days and on Sundays, at any

time, in violation of subsection (m) of Section 13 of Chapter 15, Acts of the Legislature, 1945. From an order of the Circuit Court of Kanawha County, in effect affirming an order of the Court of Common Pleas of said county, denying the writ prayed for, petitioner prosecutes this writ of error.

From the petition filed in the proceeding in the court below, it appears that petitioner, Roy K. Morris, was, at that time, the holder of a Class A license to sell non-intoxicating beer at retail, and to maintain an establishment for such sale at No. 450 Ferry Street, presumably in the City of Charleston, in said county, under the name "Cavalier Grill"; that on September 20, 1945, complaint having been filed, a warrant for his arrest was issued by respondent, Forest E. Sevy, Justice, for the alleged violation of Section 13, Chapter 15 of the Acts of the Legislature, Regular Session, 1945, particularly subsection (m) of Section 13; that he was apprehended under said warrant and appeared before the Justice aforesaid and gave bond for his appearance for trial; that petitioner was advised that the charge against him was for the operation of a juke box or other musical instrument of like character, in violation of subsection (m) aforesaid; and the petitioner, neither admitting nor denying such alleged violation, contended that the section itself was an unconstitutional exercise of legislative power, and solely on this ground a writ of prohibition was sought. A demurrer to this petition was sustained, and the rule to show cause theretofore awarded thereon, was discharged.

Though not raised on the record by any party in interest, the question whether the remedy of prohibition lies for the sole purpose of testing the constitutionality of an act of the Legislature, is squarely presented. It would, on first impression, seem that inasmuch as justices of the peace, are by Section 13 of Chapter 15, Acts of the Legislature, 1945, given jurisdiction of offenses committed under said chapter, concurrent with other courts possessing criminal jurisdiction, and in which

any constitutional question arising from the act might be determined, a justice of the peace could, in the exercise of that jurisdiction, determine the question of the constitutionality of the act involved, and that there would be no place for the exercise of the extraordinary remedy of prohibition. Judge Brannon held that view, as stated by him in *McDonald* v. *Guthrie, Judge,* 43 W. Va. 595, 27 S. E. 844. Later cases, however, take the opposite view. In *State, etc.* v. *Anderson,* 89 W. Va. 1, 109 S. E. 782, it was held that prohibition could be invoked to prevent a circuit court from proceeding in the trial of an indictment for a felony, where the statute failed to make the offense involved anything more than a misdemeanor; in *State, etc.* v. *Robinson, Judge,* 96 W. Va. 556, 123 S. E. 575, prohibition was awarded against a prosecution under what was held to be a void ordinance of the city of Wheeling; and in *Simms* v. *Dillon, Judge,* 119 W. Va. 284, pt. 1 syl., 193 S. E. 331, it was held: "In a proper case, prohibition lies to test the constitutionality of an act of the Legislature, under Code, 53-1-1, which provides that prohibition lies 'as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers.' " For a discussion of the question, see 42 Am. Jur., 168.

The next question, raised on the demurrer and briefs, is whether the Court of Common Pleas of Kanawha County has jurisdiction in proceedings in prohibition. It is contended by respondent that in this case only the Circuit Court of Kanawha County and this Court have jurisdiction in prohibition. The answer depends upon the construction of the applicable terms of our Constitution, and the Act of the Legislature creating the Court of Common Pleas of Kanawha County. Section 1 of Article VIII of the Constitution of this State, provides: "The judicial power of the state shall be vested in a supreme court of appeals, in circuit courts and the judges thereof, in such inferior tribunals as are herein

authorized and in justices of the peace." Section 19 of Article VIII provides: "The legislature may establish courts of limited jurisdiction within any county, incorporated city, town or village, with the right of appeal to the circuit court, subject to such limitations as may be prescribed by law; * * *." Section 1 of Chapter 109, Acts of the Legislature, 1915, provides: "That a court of limited jurisdiction is hereby established within and for the county of Kanawha, to be held and presided over by a judge to be selected as hereinafter provided, which court shall be named and designated as the 'Court of Common Pleas of Kanawha County' ". Section 2 thereof provides: "The said court shall have original jurisdiction within the county of Kanawha, concurrent with the circuit court of said county, in all civil causes, both at law and in equity, except where it shall appear that the matter or thing in controversy exceeds in value the sum of one hundred thousand dollars; subject to the right of appeal to the circuit court of Kanawha county, as hereinafter provided." The jurisdiction of the court was subsequently extended to include controversies where the matter involved did not exceed in value the sum of five hundred thousand dollars, but that change is not important here. Section 17 of the Act creating the court provides: "Appeals may be allowed and writs of error and supersedeas awarded to the judgments, decrees and orders of said court, by the circuit court of said county, or the judge thereof in vacation in the following cases: * * * (5) in any case of *quo warranto, habeas corpus,* mandamus or prohibition." It will be observed that the Court of Common Pleas of Kanawha County is a *court of limited jurisdiction* in two respects: (1) Its jurisdiction is limited to Kanawha County; and (2) it may not take jurisdiction over cases where the matter or thing in controversy exceeds in value the sum of five hundred thousand dollars.

The Constitution expressly confers upon courts of limited jurisdiction judicial power, subject to review by a circuit court. There is no express limitation in the

Constitution on the power that may be granted, though inferentially and necessarily the powers of the court created by the Legislature must, in some respects, be limited. The language of the statute is that within the County of Kanawha, the Court of Common Pleas shall have concurrent jurisdiction with the circuit court of that county; and the only other limitation is that relating to the amount in controversy. This in itself, we think, makes it clear that it was intended by the Legislature that the court of common pleas should have the same jurisdiction as the Circuit Court of Kanawha County, in all matters, subject only to the limitations above noted. Of course, jurisdiction is further limited by statutes which in express terms confer jurisdiction in special types of cases on the Circuit Court of Kanawha County. This view is fortified by reference to the provisions of Section 17 of the Act, wherein a writ of error is provided for in cases of *quo warranto, habeas corpus,* mandamus or prohibition. The question naturally arises, why provide for a writ of error unless it was intended that the court so established should have and exercise original jurisdiction? The case of *Chesapeake & Ohio Ry. Co.* v. *McDonald,* 65 W. Va. 201, 63 S. E. 968, cited by respondent, was decided in 1909, prior to the creation of the Court of Common Pleas of Kanawha County; but we do not say this point is controlling or even pertinent. That case merely held that " * * * as to writs of prohibition, the original jurisdiction of the circuit courts and this Court are concurrent * * *." That proposition is still good law, but we think the statute creating the Court of Common Pleas of Kanawha County made its jurisdiction in prohibition concurrent with that of the Circuit Court of Kanawha County. The act of 1915 is merely a legislative extension of jurisdiction to entertain proceedings in relation to extraordinary remedies, without in any wise impairing existing jurisdictions, something which the Legislature could not have done, and is in line with the Constitution in making the extension of such jurisdiction subject to review by the circuit court of the county where the court

of limited jurisdiction was being created. We are of the opinion that the Court of Common Pleas of Kanawha County had jurisdiction to entertain the proceeding at bar.

The next question involves the title of Chapter 15, Acts of the Legislature, 1945. That title reads: "AN ACT to amend and reenact sections two, three, four, five, twelve, thirteen, fourteen, fifteen, sixteen, eighteen and nineteen, article fifteen, chapter eleven of the code of West Virginia, one thousand nine hundred thirty-one, as enacted by chapter twelve, acts of the Legislature, regular session, one thousand nine hundred thirty-seven, and to provide that said article fifteen and all subsequent acts amendatory thereto shall hereafter be designated as article sixteen of said chapter, and to further amend said article by adding thereto sections fifteen-a and fifteen-b, all relating to nonintoxicating beer." It is contended that the Act does not warrant the amendment made to subsection (m) of Section 13 of said chapter, which amendment is: *"Provided,* That no juke box or other musical instrument of like character shall be played or operated after eleven o'clock p. m. on any week-day and at no time on Sunday", making the entire subsection (m), including the first five words of Section 13, read: "It shall be unlawful * * * (m) for any licensee to permit loud, boisterous or disorderly conduct of any kind upon his premises or to permit the use of loud musical instruments if either or any of the same may disturb the peace and quietude of the community wherein such business is located: *Provided,* That no juke box or other musical instrument of like character shall be played or operated after eleven o'clock p. m. on any week-day and at no time on Sunday."

Subsection (m) of Section 13, Chapter 12 of the Acts of the Legislature, 1937, provided: "It shall be unlawful: * * * (m) for any licensee to permit loud, boisterous or disorderly conduct of any kind upon his premises or to permit the use of loud musical instruments if either or any of the same may disturb the peace and

quietude of the community wherein such business is located." It appears, therefore, that the Act being amended by said Chapter 15, attempted to deal with the subject of boisterous or disorderly conduct, and the use of loud musical instruments which were calculated to disturb the peace and quietude of a community wherein the business of selling nonintoxicating beer might be located. The amendment to the 1937 Act only extended the inhibition to the extent that no juke box or other musical instrument of like character should be played or operated after eleven o'clock p. m. on week-days, and at no time on Sunday. The amendment is clearly germane to the purpose which the Legislature had in mind when the 1937 statute was enacted, which was to prevent loud, boisterous or disorderly conduct or the use of loud musical instruments in connection with the retail sale of nonintoxicating beer.

We had this question before us in the cases of *State* v. *Huber* and *State* v. *Falletty*, 129 W. Va. 198, 40 S. E. 2d 11. In those cases we were dealing with the question of the revocation of licenses to sell nonintoxicating beer, and with the same 1945 statute now under consideration. The Legislature attempted to confer upon the circuit courts of the various counties of the State power to hear complaints and revoke licenses to sell nonintoxicating beer, which provision was an extension of existing powers of revocation, in that such power had been theretofore vested solely in the state tax commissioner, subject to an appeal to the Circuit Court of Kanawha County. We there held that the 1945 amendment was germane to the general purpose of the 1937 act, and that the title of the Act describing it as an act amending the former statute by reference to article and section, was not in contravention of Section 30 of Article VI of the Constitution of this State. Specifically, we held: "An amendment to a statute by article and section, which is germane and conforms to the general purpose of the statute being amended, does not violate Section 30 of Article VI of the Constitution of this State,

which inhibits the Legislature from passing an act embracing more than one object, and which requires that object to be embraced in the title thereof."

We can see no distinction between the queston raised in the *Huber* and *Falletty* cases and that here present, and we therefore hold that the title to Chapter 15, Acts of the Legislature, 1945, is sufficient to cover the amendment to subsection (m) of Article 13 thereof.

Petitioner contends that the amendment to the statute prohibiting the use of juke boxes and other musical instruments of like character, after eleven o'clock p. m. on any week-day and at all times on Sunday, violates his constitutional rights under the due process and the equal protection clauses of Article XIV of the Federal Constitution.

In approaching this question, we think it well to consider the character of the business which the Legislature was attempting to regulate when it enacted Chapter 15 of the Acts of 1945. Such regulation has its basis in the police power of the State, the application of which lies with the Legislature, which, when so exercised as not to conflict with the provisions of the State or Federal Constitutions, is subject to few, if any, limitations. The regulation of the business of the sale and distribution of intoxicating liquors has always been regarded as peculiarly within the power of the Legislature, under the police power of the State, because of the inherent nature of the business, and its tendency to develop conditions and practices against which the law must impose restraints. These general principles apply to the sale of nonintoxicating beer. *Hinebaugh* v. *James,* 119 W. Va. 162, 192 S. E. 177. It was there stated: "Notwithstanding the legislature has declared that beer containing not in excess of five per centum alcohol is non-intoxicating, it by no means follows that the legislature is thereby precluded from setting up strict regulations for the manufacture, distribution and retail of that commodity. Though beer be considered non-intoxicating, nevertheless, the generally known facts pertaining to the manner

in which it is often dispensed and of the evils which not infrequently attend thereunto, we entertain no doubt that the legislature may set up such system of beer regulation as it may deem proper, within the Constitution. And such regulation may apply to distribution as well as to manufacturing and retailing. The situation is so closely analogous to the traffic in hard liquor, as to the regulation whereof under the police power there can be no doubt, that the propriety of strictly circumscribing the beer business seems obviously proper. Such a matter is essentially for legislative determination. The legislature, and not the courts, must determine the policy of the state to be voiced in statutory enactments." We approve the above statement as to the legislative power in the premises.

We think it should be kept in mind that the purpose of the Legislature was not to enact a law dealing with the usual and proper use of musical instruments of all types. Its purpose was to regulate the business of the sale of nonintoxicating beer, and to guard against abuses which sometimes arise therefrom. If the use of certain types of musical instruments was calculated to create loud and disturbing noises, the Legislature had the power to restrict, or even prohibit their use. There is a distinct difference between prohibiting the use of such instruments in the home, or any place of business not requiring special regulation, and their use in connection with the sale of alcoholic liquors, or even nonintoxicating beer. In the first instance an unreasonable restriction against their use might be in conflict with the equal protection clause of the Federal Constitution; but even in such a case, the use of any type of musical instrument, to the point where it becomes a nuisance, and interferes with the peace and comfort of those who are forced to endure the torment of hearing it, may be prohibited through well-known legal and equitable processes.

In our opinion, the petitioner has overlooked what to us seems the clear distinction between what he would

term a discriminatory proceeding in relation to the use of juke boxes and other musical instruments of like character, when used in connection with a business requiring special regulation, and their use in the home or in connection with a business not requiring such special regulation. The legislative power to prohibit the use of such instruments, or to restrict their use, lies in its undoubted power to regulate the particular type of business in which petitioner is engaged. His business is one for which a state license is required; and that license was issued and accepted upon the condition that the licensee would conform to the terms and provisions of the statute under which the license was issued. There is no restriction upon his right to purchase a juke box or other musical instrument of like character; there is no restriction upon his use thereof, so long as he does not disturb the peace and quietude of the community in which his business is located, except that he may not use them after eleven o'clock p. m. on week-days and at no time on Sunday. It is contended that this is a discrimination in that there is no such inhibition as to the use of other musical instruments. There is no specific inhibition against the use of other musical instruments at any time; but there is an inhibition against the use, at any time, of loud musical instruments, which might disturb the peace and quietude of the community. So after all, the discrimination is more imaginary than real.

Then, doubt exists as to whether petitioner is entitled to raise the question of discrimination. If he has that right it depends upon his ownership of a limited number of these instruments and his right to use the same. The question could be more properly raised by the manufacturer of these instruments; but even so, we do not think anyone, whatever his interest may be, has the constitutional right to use property owned by him, or manufactured by him, in such a manner as to disturb the peace of the community, or in conflict with regulations prescribed for their use necessary to protect the

peace and quietude of the community at large.

We are therefore of the opinion that the amendment to subsection (m) of Section 13 of Chapter 12 of the Acts of Legislature, 1937, as made by Chapter 15, Acts of the Legislature, 1945, is a constitutional and valid exercise by the Legislature of the police power of the State, in respect to the regulation of the business of the retail sale of nonintoxicating beer; and that any discrimination which may arise therefrom, as against juke boxes and other musical instruments of like character, in respect to the hours in which they may be used, is not such as makes the Act invalid under the due process or the equal rights clauses of the Federal Constitution, or of any provision of the Constitution of this State.

The rulings of the Common Pleas and the Circuit Courts of Kanawha County are affirmed.

*Rulings Affirmed.*

RILEY, JUDGE, dissenting in part:

In concur in points 1, 2, 3 and 4 of the syllabus and the parts of the opinion bearing upon those points. Likewise, I concur in the statements in the opinion, to the effect that the Legislature has the right to enact legislation which is properly designed to regulate the sale of nonintoxicating beer. However, in my opinion the proviso added to Subsection (m), Section 13, by Acts of the Legislature, 1945, "That no juke box or other musical instrument of like character shall be played or operated after eleven o'clock p. m., on any week-day and at no time on Sunday", is unconstitutional in the absence of a legislative or factual finding that a "juke box or other musical instrument of like character" is loud and designed to disturb the peace and quietude of the community wherein nonintoxicating beer is sold at retail. In the first place, though the words "juke box" may have a common and accepted meaning, there is nothing in the statute, nor in the modern American dictionaries which would inform this Court as to the character of

a "juke box". Code, 57-1 provides as to what matters of which a Court may take judicial notice. In *Elswick* v. *Charleston Transit Company,* 128 W. Va. 241, 36 S. E. (2d) 419, this Court held that, a court, other than a municipal court, cannot take judicial notice of a municipal ordinance. Certainly this Court should not take judicial notice, as contended, that juke boxes are musical instruments which may be operated by the customers in the places where nonintoxicating beer is sold at retail, and that they tend to disturb the peace. If the Legislature had intended to prohibit the use of such musical instruments, as described in the amendment, it could have done so if, from legislative finding or otherwise, it clearly appears that such use would be designed to disturb the peace and quietude of the communities in which nonintoxicating beer is sold, but the Legislature did not so deign. This Court, not being empowered under the Constitution of the State, to enact legislation, by judicial decision, we cannot insert into the statute provisions which the Legislature itself did not incorporate therein. Moreover, legislation, whether it deals with the regulation of nonintoxicating beer, or not, must be germane to the police power of the State. Prior to the amendment of 1945, adding the proviso, heretofore quoted, to Subsection (m) thereof, Section 13, Chapter 12, Acts, 1937, provided, in part, "It shall be unlawful * * * (m) For any licensee to permit loud, boisterous or disorderly conduct of any kind upon his premises or to permit the use of loud musical instruments if either or any of the same may disturb the peace and quietude of the community wherein such business is located." But the amendment of said Subsection (m) provides, "That no juke box or other musical instrument of like character" shall be played or operated at certain specified times, regardless of whether such instrument would tend to breach the peace and quietude of the community. If the Legislature thought that a "juke box or other musical instrument of like character", may disturb the peace and quietude of the community, then the amendment would serve no purpose in regulation of the sale

344

of nonintoxicating beer in view of the provisions of Section 13 prior to amendment. In my opinion, the provision as to juke boxes and other musical instruments, read in the light of the other language, contained in said Subsection (m) is arbitrary, discriminatory and unconstitutional. In so saying I do not desire to be understood as denying to the Legislature the right to legislate, as I think it should, in the interests of the regulation of the sale of nonintoxicating beer at retail. I would award the writ.