# CHARLESTON.

## STATE v. McBEE.

Submitted June 13, 1902.  Decided December 13, 1902.

1. INDICTMENT—*Burden of Proof.*
   On the trial of an indictment under section 16, chapter 149, Code, the burden of proof is on the State to satisfy the jury that the labor was not in household work or other work of necessity or charity.  (p. 260).

2. INSTRUCTION—*Error.*
   On such trial refusal by the court when asked to instruct the jury to that effect is error.  (p. 260).

3. INDICTMENT—*Sabbath Breaking.*
   If upon the trial of an indictment under such section it shall be made to appear to the satisfaction of the jury that material permanent loss and injury would come to the owner of an oil well by reason of not pumping it on Sunday, such pumping would be deemed a work of necessity under the statute.  (p. 263).

Error to Circuit Court, Ritchie County.

John McBee was convicted of violating the Sunday law, and brings error.

*Reversed.*

H. H. Moss and CAMDEN & PETERKIN, for plaintiff in error.

The ATTORNEY GENERAL, for the State.

McWHORTER, JUDGE:

John McBee was indicted in the circuit court of Ritchie County under section 16, chapter 149, Code. The indictment contained two counts, the first a general charge that the defendant "Was found unlawfully laboring at a certain calling on the Sabbath day, said calling not being a household or other work of necessity or charity, against the peace and dignity of the State." The second count was that the defendant "Was then and there found unlawfully laboring at a trade or calling, to-wit: That of well pumper, pumping an oil well, the same not being a household or other work of necessity or charity." The

defendant appeared and moved to quash the indictment but the court overruled the motion, when the defendant plead not guilty. No ground for the motion to quash having been pointed out nor error claimed either in petition for writ of error or in defendant's brief, and the indictment appearing to be sufficient the motion to quash was properly overruled. The issue was tried before a jury which rendered a verdict of guilty. The defendant moved to set aside the verdict because the same was contrary to the law and the evidence, and to grant him a new trial, which motion was overruled. The defendant then moved in arrest of judgment, which motion was also overruled and the court fixed the fine at ten dollars and entered up judgment on the verdict. Defendant procured a writ of error, assigning several errors in his petition based upon bills of exceptions taken by him during the trial. The first error claimed, is in refusing to permit the jury to consider certain proper evidence offered by defendant as shown in bill of exceptions No. 2. On cross-examination by defendant, of prosecuting witness J. H. Davisson, counsel for defendant, was questioning witness about trouble between himself and defendant when witness spoke of the women folks having gotten up a trouble that witness "took up." When he was asked to "State what that was" he answered "That was a little trouble among the girls there." He then asked witness "State what the trouble was"? Which question was objected to by the prosecuting attorney and objection sustained, and exception taken. While it is true the objection was sustained and the question was not permitted to be asked, yet on further cross-examination the witness stated fully in reply to defendant's questions what the trouble was, without objection; so that whatever there was in the question and answer to benefit the defendant or affect the case defendant had the benefit of it subsequently.

The second error assigned was the permitting of improper evidence to be considered, as set out in bill of exceptions No. 3, when witness W. K. Jacobs, who had charge of the Cairo Oil Co.'s property, testified for defendant. On cross examination by the prosecuting attorney, witness was asked "Is it not a fact that the Cairo Oil Co. orders you to have your men pump this well on Sunday?" Objection of defendant to the question was overruled and question permitted to be asked and defendant ex-

cepted. Defendant in his brief claims that the question was calculated to prejudice defendant's case in the minds of the jury by tending to create the impression that the Oil Co., instead of John McBee, was on trial. His answer is "So far as the wells are concerned, the company never gave me any instruction one way or the other." It seems to me the tendency of the question, if it made any impression at all upon the jury, would be favorable to the defendant in that if he had such instructions from the company that it would tend to relieve him from the responsibility which otherwise would attach to him alone; but whether he had instructions or not, if the work did not come within the exception of the statute, being a work of charity or necessity, he was equally liable for the violation.

The next exception noticed in defendant's brief is that of the court sustaining the objection by the attorney for the State to question asked W. F. Taylor, the witness for defendant, who was a practical oil man and had worked in the oil field where the wells in question were situated and had had charge of them some two or three years before that and had stated that he had shut them down on Sunday; and that they did not get Sunday's production back until probably Tuesday, and the wells kept dropping off and he commenced pumping them again and got a steady production; and that he was afraid that to shut them off on Sunday would spoil the wells altogether, and that he believed that pumping them on Sunday was a work of necessity. Then he was asked to "State whether speaking from your experience there is likely to be any change in these wells since you were superintendent?" An objection to which question by the attorney for the State was sustained and exceptions taken. An answer to the question must have been purely speculative, mere "guess work" and the answer to the next question propounded by the defendant indicates very clearly that if witness had been permitted to answer the question it must have been to the effect that he could not tell whether there would be a change or not. He was asked to "State to the jury whether after a well has been shut down as you shut down these wells, the shutting down of them afterwards is no more injurious than it was at first?" He answered "I don't know. Of course it is the water that bothers them and I suppose as the water goes down it would not be needed to pump quite so much." The next and only other assignment

of error noticed by defendant in his brief is the refusal of the
court to give the instruction offered by the defendant as fol-
lows: "The court instructs the jury that the burden of proof
is on the State in this case to establish beyond reasonable doubt
the fact that the defendant pumped or operated certain oil
well or wells in Ritchie County on a Sabbath day within one
year prior to the finding of this indictment; and further, that
the burden of proof is on the State to prove that such pumping
or operating was not a work of necessity or charity," as set out
in bill of exceptions No. 11. This instruction was refused as
offered but modified by the court by striking out the last clause,
in relation to the burden of proof and the bill of exceptions
shows that this modification was made because the law on the
burden of proof was in effect given by defendants 1, 2, 4 and 5
instructions. I have carefully examined the said instructions
1, 2, 4 and 5 as given by the court at the request of the defend-
ant and fail to find in any one of them a single expression
which could be construed to touch the law of the burden of
proof; the first and fourth merely state that if the jury believe
from the evidence certain things set out, and that the work
done was necessary to preserve the property from destruction,
etc., and no more work was done than was so necessary, then
they should find for the defendant.

The second is that unless they believe beyond reasonable
doubt from the evidence that the work done was not the work
of necessity or charity, then they should find for the defendant;
and No. 5 is that the object of the law regulating work on Sun-
day is to obtain a day of rest for the citizens of the State and
is not grounded on any religious tenet or belief. The question
of the burden of proof is not touched in any of said instruc-
tions. In *State* v. *Railroad Co.,* 24 W. Va. 783, it is held:
That the court properly instructed the jury "That the burden
of proof is on the State to satisfy the jury that the locomotive
and train of cars were not run as a work of necessity or char-
ity." In *State* v. *Railroad Co.,* 15 W. Va. 362, it is held: "In
an indictment against a railroad for being found laboring at its
trade and calling on a certain Sabbath day it is proper and
necessary to allege that such labor was not in household work
or work of necessity or charity," and being a necessary allega-
tion it must be proved and the burden of proof is with the

State to sustain all its allegations. "The law requires the allegation to be full, every fact which is an element in a *prima facie* case of guilt must be stated; otherwise there will be at least one thing the accused person is entitled to know, whereof he is not informed. And that he may be certain what each thing is, each must be charged expressly and nothing left to intendment. All that is to be proved must be alleged." 1 Bishop Criminal Procedure, s. 519. The offense charged in the indictment in case at bar is a statutory offense, and if the labor as charged was a household or other work of necessity or charity no offense was committed; hence the necessity to negative the fact in the allegation, and to prove the same. In *Davis* v. *Webb,* 46 W. Va. 6, it is held: "Whenever a correct instruction is refused the judgment will be reversed unless the appellate court can see from the whole record that even under correct instructions a different verdict could not have been rightly found, or unless it is able to perceive that the erroneous ruling of the court could not have influenced the jury;" *Bank* v. *Waddill,* 27 Grat. 448; and it is further held in *Davis* v. *Webb,* "It is the plain duty of a trial court when asked to do so by either party to instruct the jury on questions of law involved in the case when it can thereby aid them in reaching a right conclusion and proper verdict." *State* v. *Evans,* 33 W. Va. 417, (Syl. pt. 3). The court erred in modifying the defendant's instruction by striking out the last clause which instructed the jury "That the burden of proof is on the State to prove that such pumping or operating was not a work of necessity or charity." It is insisted that the court erred in refusing the motion of defendant to set aside the verdict of the jury and grant a new trial on the ground that the verdict was contrary to the law and the evidence. The evidence is conflicting as to whether or not the work done was a work of necessity for the preservation of the oil wells operated. Many cases are cited where the courts have held that work done on Sunday or the Sabbath day, where it is shown to be necessary to the preservation of property is not a violation of the law. As in *Flagg* v. *Millbury,* 4 Cush. 243, a work of necessity is defined to be "Not a physical and absolute necessity; but any labor, business or work which is morally fit and proper to be done on that day under the circumstances of that particular case is a work of

necessity within the statute;" and in *Com.* v. *Nesbit,* 34 Pa. St. 398, it is held: "The law does not condemn those employments which society regards as necessary even when they encroach on the Lord's day; if, according to the ordinary skill of the business it be necessary to do so. And then the business being recognized as necessary it may be performed by means of the services of others, and by all the ordinary means of the business, so far as it is necessary." *Wilkinson* v. *State,* 59 Ind. 416; 26 Am. Rep., 84; *Edgerton* v. *State,* 67 Ind. 588; 33 Am. Rep. 110; *McGatrick* v. *Wason,* 4 O. 566; *Hennersdorf,* v. *State,* 25 Texas App. 597. Defendant cites the case of *Commonwealth* v. *Gillispie,* decided by the court of Quarter Sessions and reported in 21 Pitts. L. J. 213, which I am unable to find in the library, from which defendant's counsel quotes, "Pumping of oil wells on Sunday, it appearing that if they were not pumped, loss results to the owners by reason of salt water getting in the wells, is a work of necessity within the act." If it is shown to the satisfaction of the jury that permanent loss and injury comes to the owner of an oil well by reason of not pumping on Sunday such work would be deemed a work of necessity; but if there is no permanent loss of property and he is only delayed for the time being in procuring the oil from his well I see no reason why he should be permitted to pump the oil on Sunday any more than the farmer should be permitted to clear his land or plow his fields on that day. All work under the statute is supposed to come to a stand-still on Sunday or the Sabbath day, and it is only in case of actual loss or injury by reason of such delays that it becomes a work of necessity to save the property. In case at bar there was evidence tending to show that there was no damage or loss by shutting down the well on Sunday; while on the other hand there was evidence tending to show that such shutting down would not only result in loss of production of oil but permanent injury to the well. The question was purely a question for the jury; it was their province to weigh the testimony and say whether the work complained of was a work of necessity.

For the reasons stated the judgment will have to be reversed, the verdict set aside and a new trial granted.

*Reversed.*