STATE *Ex Rel.* HECK'S, INC., *a corporation*

*v.*

LONNIE GATES, JUSTICE OF THE PEACE OF KANAWHA COUNTY, WEST VIRGINIA;

STATE *Ex Rel.* HAROLD LEVENSON

*v.*

LONNIE GATES, JUSTICE OF THE PEACE OF KANAWHA COUNTY, WEST VIRGINIA;

STATE *Ex Rel.* JAMES NAJAR

*v.*

LONNIE GATES, JUSTICE OF THE PEACE OF KANAWHA COUNTY, WEST VIRGINIA;

STATE *Ex Rel.* HARRY L. TURNER, JR.,

*v.*

LONNIE GATES, JUSTICE OF THE PEACE OF KANAWHA COUNTY, WEST VIRGINIA;

STATE *Ex Rel.* BILLY RAY LEE

*v.*

LONNIE GATES, JUSTICE OF THE PEACE OF KANAWHA COUNTY, WEST VIRGINIA;

*and*

STATE *Ex Rel.* FRANK RUSHDEN

*v.*

ELI P. GORE, JUSTICE OF THE PEACE OF LOGAN COUNTY, WEST VIRGINIA

(Nos. 12374, 12375, 12376, 12377, 12378 and 12379)

Submitted January 13, 1965.          Decided April 13, 1965.

422

424

*Stanley E. Preiser, W. Dale Greene,* for relators.

No appearance for respondents.

HAYMOND, JUDGE:

In these six separate original prohibition proceedings instituted in this Court by the Petitioners, Heck's, Inc., a corporation, Harold Levenson, James Najar, Harry L. Turner, Jr., and Billy Ray Lee, separately against the same defendant, Lonnie Gates, Justice of the Peace of Kanawha County, West Virginia, and by the petitioner, Frank Rushden, against the defendant, Eli P. Gore, Justice of the Peace of Logan County, West Virginia, which have been consolidated and heard and submitted as one proceeding in this Court, each petitioner seeks to prohibit the defendant in each proceeding from further prosecuting him under the separant warrants issued by the respective defendants and now pending before them, which charged the petitioners respectively with violation of Chapter 61, Article 10, Section 25, Code, 1931, as amended by Chapter 12, Acts of the Legislature, 1964, Regular Session, passed January 30, 1964, effective ninety days from passage, and generally known or referred to as the Sunday Closing Law. This statute was enacted to take the place of a similar statute, Chapter 37, Acts of the Legislature, 1963, Regular Session, which was held to be unconstitutional by this Court in *State ex rel. Heck's*

*Discount Centers, Inc.* v. *Winters,* 147 W. Va. 861, 132 S. E. 2d 374, because it was voted upon by the Legislature when the regular session had ceased and terminated by the passage of time and by operation of law. The alleged violations in Kanawha County, here involved, occurred prior to the action of the voters of that county in deciding that the foregoing statute would no longer continue in effect in that county.

Upon the filing of the petition in each proceeding this Court, on September 30, 1964, issued a rule returnable January 13, 1965, at which time these proceedings were heard together and submitted for decision upon the several petitions, and the written briefs and the oral arguments of the attorneys for the petitioners. There has been no appearance in this Court in behalf of either defendant.

The petitioners assert that the foregoing statute is unconstitutional, null and void, and that the prosecution of each of the respective petitioners for his alleged violation of its provisions should be prevented by a writ of prohibition.

It is well settled by many decisions of this Court that by virtue of the statute, Section 1, Article 1, Chapter 53, Code, 1931, the writ of prohibition lies as a matter of right in all cases of usurpation and abuse of power, when the court does not have jurisdiction of the subject matter in controversy, or having such jurisdiction, exceeds its legitimate powers. *State ex rel. Heck's Discount Centers* v. *Winters,* 147 W. Va. 861, 132 S. E. 2d 374; *Rakes* v. *Ferguson,* 147 W. Va. 660, 130 S. E. 2d 102; *State ex rel. Cecil* v. *Knapp,* 143 W. Va. 896, 105 S. E. 2d 569; *State ex rel. Cosner* v. *See,* 129 W. Va. 722, 42 S. E. 2d 31; *White Sulphur Springs, Inc.* v. *Ripley,* 124 W. Va. 486, 20 S. E. 2d 794; *Morris* v. *Calhoun,* 119 W. Va. 603, 195 S. E. 341; *Weil* v. *Black,* 76 W. Va. 685, 86 S. E. 666; *Powhatan Coal and Coke Company* v. *Ritz,* 60 W. Va. 395, 56 S. E. 257, 9 L.R.A., N. S., 1225; *Johnston* v. *Hunter,* 50 W. Va. 52, 40 S. E. 448; *Norfolk and Western Railway Company* v. *Pinnacle Coal Company,* 44 W. Va. 574, 30 S. E. 196, 41 L.R.A. 414. If the statute in question is un-

constitutional it is clear that a writ of prohibition will lie to prevent the prosecution of an offense created by the statute. *Morris* v. *Sevy,* 129 W. Va. 331, 40 S. E. 2d 874; *Simms* v. *Dillon,* 119 W. Va. 284, 193 S. E. 331, 113 A.L.R. 787.

The petitioners separately challenge the constitutionality of the statute and assign eleven grounds in support of their contention. The principal grounds of attack, as summarized, are:

(1) Its provisions are vague and uncertain and violate the essential requirement that a criminal statute must be so certain and definite that a person committing an act forbidden by it can tell, when he does so, that he is violating the law;

(2) It violates the Establishment Clause and the Free Exercise Clause of the First Amendment to the Constitution of the United States and Article III, Section 15, of the Constitution of this State;

(3) It violates the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States;

(4) It violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States;

(5) It violates Article VI, Section 39, of the Constitution of this State because it is a special act and deals with a situation for which a general act is proper;

(6) It violates the Eighth Amendment to the Constitution of the United States and Article III, Section 5, of the Constitution of this State in that it imposes excessive fines and inflicts cruel and unusual punishment;

(7) It violates the First Amendment to the Constitution of the United States and Artcle III, Section 7, of the Constitution of this State in that it abridges freedom of speech; and

(8) It violates the Interstate Commerce Clause, Article I, Section 8, of the Constitution of the United States.

The warrant issued by the defendant Gates against the petitioner, Heck's, Inc., charged the petitioner with unlaw-

fully selling merchandise and causing its servants to work, on Sunday, in violation of the statute; the warrant issued by the defendant Gates against the petitioner, Harold Levenson, who is a member of the Orthodox Jewish faith and who as such considers and observes Saturday rather than Sunday as the Sabbath, charged the petitioner with unlawfully purchasing, on Sunday, an article of merchandise, in violation of the statute; the warrant issued by the defendant Gates against the petitioner, James Najar, who is a member of the Druse faith and who as such considers and observes Friday rather than Sunday as the Sabbath, charged the petitioner with unlawfully purchasing, on Sunday, an article of merchandise, in violation of the statute; the warrants issued by the defendant Gates against the petitioners, Harry L. Turner, Jr. and Billy Ray Lee, charged each of them with unlawfully engaging in work and selling certain prohibited articles of merchandise, on Sunday, in violation of the statute; and the warrant issued by the defendant Gore against the petitioner, Frank Rushden, who is a member of the Moslem faith and who as such considers and observes Friday rather than Sunday as the Sabbath, charged the petitioner with unlawfully engaging in work, on Sunday, in violation of the statute.

Section 25 of the statute, which makes it unlawful for any person to engage in work, labor or business or to employ any person to engage in work, labor or business, except in household or other work of necessity or charity, on Sunday, and which designates numerous exemptions for work of necessity or charity, provides that "On the first day of the week, commonly known and designated as Sunday, it shall be unlawful for any person to engage in work, labor or business, or to employ any person to engage in work, labor or business, except in household or other work of necessity or charity. Except as hereinafter provided the exemption for works of necessity or charity contained in the preceding sentence shall not be deemed to include selling at retail or wholesale or by auction, or offering or attempting to sell on Sunday any of the following:  Jewelry; precious and semi-precious stones; silverware; watches; clocks; luggage; mus-

ical instruments; recordings; toys; clothing and wearing apparel; clothing accessories; footwear; textile yardgoods; housewares; china; kitchenware; home, business, office or outdoor furniture, furnishings and appliances; sporting goods (excluding sales or rental of bathing, boating and fishing paraphernalia and equipment, and sales or rental on the premises where sports, athletic games and events or recreational facilities are located or conducted of equipment essential to the normal use or operation of such premises for the purposes specified); pets, pet equipment or supplies; photographic supplies (excluding cameras, film and flash bulbs); hardware (excluding light bulbs, batteries and electrical fuses); tools; paints; building and lumber supplies and materials; motor vehicles; and farm implements. Also, said exemption shall not be deemed to include the redemption of trading stamps. No inference shall arise from the foregoing enumeration of classes of personal property that sales or offers or attempts to sell other classes of personal property not mentioned are included within the above exemptions for works of necessity or charity."

Section 26, which contains eighteen separate exclusions, is expressed in these terms:

"It shall not be a violation of the preceding section of this article for any person to engage in any of the following activities on Sunday:

"(1)  Transportation of the mail or any other activity in connection with the mail.

"(2)  Transportation of persons or property by any present or future mode of public or private conveyance or other activity in connection with any such mode of public or private conveyance.

"(3)  The operation of car-washing establishments, garages and gasoline service stations, including the sale of commodities and services customarily furnished at such garages and service stations.

"(4)  The operation of public utilities, manufacturing establishments, construction work, the production and pro-

cessing of natural resources, or where there is an obligation to fulfill a provision in a contract wherein time is of the essence.

" (5)    Operation of grocery stores, restaurants, taverns or other similar establishments engaged primarily in the sale of beverages or food products for human consumption.

" (6)    An isolated transaction in which any tangible personal property is sold by the owner thereof, such sale not being made in the ordinary course of repeated and successive transactions of like character by such owner.

" (7)    Professional and amateur sports, athletic contests and events, and concessions incidentally connected therewith.

" (8)    Operation of recreational, amusement, scenic, historic and educational facilities and activities in connection therewith.

" (9)    Advertising the sale of property or services.

" (10)    Unattended vending machines, vending personal property or services.

" (11)    The operation of antique shops and novelty and souvenir shops.

" (12)    The showing of real estate or mobile homes.

" (13)    The operation of a retail outlet for the exclusive sale of its products by an industry located in West Virginia.

" (14)    The sale of farm produce; the repair and operation of farm and orchard implements and equipment, and the spraying and dusting of farm crops by airplane.

" (15)    The sale of flowers or floral wreaths and arrangements.

" (16)    The sale at retail of hunting and fishing licenses and the sale of ammunition to persons possessing a valid hunting license.

" (17)    The sale of magazines, books, periodicals and newspapers.

"(18)   An isolated sale made to meet what the seller believes in good faith to be an unexpected emergency in which the health or property of some person is in jeopardy.

"No contract shall be deemed void because it is made on Sunday."

Section 27 provides penalties for violation of the statute and states that the penalty for the first offense shall be a fine of not less than $25.00 or more than $100.00; for the second offense committed within one year of the previous offense a fine of not less than $250.00 or more than $500.00 and in the discretion of the court a jail sentence not to exceed thirty days; and for a third or any subsequent offense committed within two years of the previous offense a fine of not less than $500.00 or more than $1,000.00 and, in the discretion of the court, a jail sentence for a period not to exceed six months.  It also provides that each Sunday a person is engaged in work, labor or business, or employs others to be so engaged, in violation of Section 25, shall constitute a separate offense and that justices of the peace shall have concurrent jurisdiction with circuit and criminal courts of such offenses.  This section also provides that the penalties imposed shall not be incurred by any person who conscientiously believes that Saturday ought to be observed as a Sabbath and actually refrains from all secular business and labor on that day, if he does not compel an apprentice, servant or employee not of his belief to do secular work or business on a Sunday.

Section 28 provides for local option elections to continue or discontinue the statute in any county of the State.

Section 29 declares that the sections of the statute shall be considered as separable in connection with a judicial decision which holds any portion of the statute to be unconstitutional.

The petitioners contend that the provisions of the statute, particularly those contained in Sections 25 and 26, are so vague and uncertain that they do not inform a person charged with violation of the statute of the particular acts forbidden or permitted by it or enable him to understand,

if he commits any of such acts, whether he has or has not committed any offense created by the statute, and that, for that reason, those sections of the statute violate the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and Article III, Sections 10 and 14, of the Constitution of this State which provide that no person shall be deprived of life, liberty or property without due process of law and that in all trials of crimes and misdemeanors the accused shall be fully and plainly informed of the character and cause of the accusation.

The particular provisions which the petitioners assail as invalid because too vague and indefinite are the exception from the work, labor or business proscribed by Section 25 which permits a person to engage in "household or other work of necessity or charity"; the provisions of Section 25 excluding sales or rental of bathing, boating and "fishing paraphernalia and equipment," and sales or rental on the premises where sports, athletic games and events or recreational facilities are located or conducted of "equipment essential to the normal use or operation of such premises for the purposes specified"; the provisions in Section 26 excluding "operation of antique shops and novelty and souvenir shops", "transportation of the mail or any other activity in connection with the mail."; "transportation of persons or property by any present or future mode of public or private conveyance or other activity in connection with any such mode of public or private conveyance."; "operation of car-washing establishments, garages and gasoline service stations, including the sale of commodities and services customarily furnished at such garages and service stations."; "operation of grocery stores"; "professional and amateur sports, athletic contests and events, and concessions incidentally connected therewith."; and "operation of recreational, amusement, scenic, historic and educational facilities and activities in connection therewith." The activities mentioned in the foregoing quoted provisions of Section 26, if engaged in by any person, are declared not to be a violation of Section 25 of the statute. Of course, if the foregoing quoted provisions are too vague and uncertain to en-

able an accused to know when he engages in any of the foregoing activities that he has or has not violated the statute and committed a crime, the statute would, at least with respect to those activities, be constitutionally invalid as violative of the fundamental principle that a statute creating a crime must be so certain and definite that a person committing an act which it forbids can tell, when he does so, that he has violated the law. *State* v. *Lantz,* 90 W. Va. 738, 111 S. E. 766, 26 A.L.R. 894; *United States* v. *L. Cohen Grocery Company,* 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A.L.R. 1045. See also *State* v. *Harrison,* 130 W. Va. 246, 43 S. E. 2d 214; *State* v. *Mangus,* 120 W. Va. 415, 198 S. E. 872; *State* v. *Masters,* 106 W. Va. 46, 144 S. E. 718. In the last cited three cases this Court recognized the principle enunciated in the Lantz case but denied its application to the particular statutes under consideration in those cases.

The contention of the petitioners that the quoted provisions of the statute are too vague and uncertain to be constitutionally valid is without merit. The provisions of Section 25 of the statute closely resemble and are practically identical with the provisions of Section 18-329 of Chapter 267, Acts of the Virginia Assembly of 1960, which is referred to as the Sunday Closing Law of that State, the constitutionality of which was assailed, but was upheld by the Supreme Court of Appeals of Virginia, in the recent case of *Mandell* v. *Haddon,* 202 Va. 979, 121 S. E. 2d 516. The Virginia statute, after proscribing generally all work, labor or business on Sunday, provides that "On the first day of the week, commonly known and designated as Sunday, it shall be unlawful for any person to engage in work, labor or business, or to employ others to engage in work, labor or business," expressly excepted from the proscription of the statute "household or other work of necessity or charity." That phrase which almost without exception is contained in the Sunday Closing Laws in most of the states which have enacted such laws, was incorporated in a statute of Virginia as long ago as 1705, 3 Hening's Statutes at Large, 360; and again in 1786 when the Sunday Closing Law presented to the Virginia legislators by James Madison was enacted, 12

Hening's Statutes at Large, 336; and was also incorporated in Chapter 7 of the Statutes of 29, Charles II, enacted in 1676 which was the law in the colonies at the time of the Revolutionary War and formed the original basis of the Sunday Closing Laws in many of the states. That phrase has also been incorporated as an exception from the general proscription of "work, labor or business" in every Sunday Closing Law enacted by the Legislature of this State and it has been generally recognized and considered as a constitutionally valid statutory provision. In *State* v. *McBee,* 52 W. Va. 257, 43 S. E. 121, 60 L.R.A. 638; *State* v. *Knight,* 29 W. Va. 340, 1 S. E. 569; *State* v. *Railroad Company,* 24 W. Va. 783, 49 Am. Rep. 290; *State* v. *The Baltimore and Ohio Railroad Company,* 15 W. Va. 362; and *Raines* v. *Watson,* 2 W. Va. 371, in which the applicable Sunday Closing Law was considered, the constitutionality of the exception "household or other work of necessity or charity" was not questioned and its validity was given recognition and effect by the holding in *State* v. *McBee,* 52 W. Va. 257, 43 S. E. 121, 60 L.R.A. 638, and in *State* v. *Railroad Company,* 24 W. Va. 783, 49 Am. Rep. 290, that in order to convict a person of the offense created by the statute the State must prove that the act of the accused was not a work of necessity or charity. The Virginia Sunday Closing Law, the constitutionality of which was upheld in the *Mandell* case, contained as exclusions from the activities proscribed by the statute "items customarily sold as novelties and souvenirs", "sales or rental of bathing, boating and fishing paraphernalia and equipment" and "sales or rental on the premises where sports, athletic events or recreational facilities are located or conducted of equipment essential to the normal use or operation of such premises for the purposes specified". It also provided that the proscriptive section of the statute should not apply to "the sale of motor fuels or oils, repair parts or accessories for immediate necessary use in connection with motor vehicles, boats or aircraft, nor to the operation of motion picture theaters nor to sports, athletic events, scenic, historic and recreational and amusement facilities." None of these provisions which closely resemble the quoted challenged provisions of Sections 25 and 26 of

the Sunday Closing Law of this State was condemned or held to be too vague or uncertain to be constitutionally valid by the Virginia Supreme Court of Appeals in the *Mandell* case. In that case on the question whether the phrase in the provision "works of necessity" was too vague or uncertain, the court said:

"The appellants also say under this assignment of error that the General Assembly, by the very nature of things, cannot define 'works of necessity' because this Court said in *Pirkey Bros.* v. *Commonwealth,* supra; *Francisco* v. *Commonwealth,* 180 Va. 371, 23 S. E. 2d 234; and *Rich* v. *Commonwealth,* supra, that the term 'works of necessity,' as contained in the old Sunday law, was an elastic phrase, to be defined in the light of the age in which we live, and that it might be considered differently in different communities of the State.

"The answer to this argument is that the old law fixed no standard as to what was meant by 'works of necessity' and the test to be applied was left to the jury to decide, if reasonable men could not agree on its application to a particular state of facts.

"Definition is of the very nature of legislation. *Commonwealth* v. *Whiting Oil Co.,* 167 Va. 73, 76-77, 187 S. E. 498, 499-500. It is in this very field that the legislative branch fulfills its strongest function by determining policy on questions over which reasonable men may disagree."

In *State* v. *Knight,* 29 W. Va. 340, 1 S. E. 569, this Court, in considering the meaning of "work of necessity", as incorporated in an earlier Sunday Closing Law of this State, Section 16, Chapter 123, Acts of the Legislature, 1882, Regular Session, which provided that "If any person on a Sabbath Day be found laboring at any trade or calling or employ his minor children, apprentices or servants in labor or other business except in household or other work of necessity or charity, he shall be fined not less than five dollars for each offence.", held in point 2 of the syllabus that "On a trial for a violation of the Sunday-statute it is the province of the jury to determine under all the facts and cir-

cumstances of the case, whether the work charged to have been done on Sunday was or was not a work of 'necessity;' and when the jury has found, that it was not a work of necessity, the appellate court will not disturb the verdict unless the facts proven do not warrant such finding."

On the ground of vagueness and uncertainty, the petitioners also challenge the constitutionality of the provision in Section 25 of the statute that "No inference shall arise from the foregoing enumeration of classes of personal property that sales or offers or attempts to sell other classes of personal property not mentioned" are included within the above exemptions of "works of necessity or charity." That challenge is devoid of merit. An identical provision is incorporated in Section 18-329, Chapter 267 of the Virginia Sunday Closing Law and the constitutionality of that provision of the statute was recognized and upheld in the *Mandell* case.

The Maryland Statute, Article 27, Section 509, of the Maryland Annotated Code, which excluded from the proscription of the statute the performance of certain acts in a specified county of that State, provided that it shall be lawful to operate, work at, or be employed in the occupation of operating any bathing beach, bathhouse, amusement park, dancing saloon; or sale of novelties, souvenirs, accessories or other merchandise essential to, or customarily sold at, or incidental to, the operation of such occupations and businesses, and its constitutionality was challenged in *McGowan v. Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393. These provisions, which very much resemble the challenged provisions of Sections 25 and 26, were not condemned or held to be too vague or uncertain to be constitutionally invalid by the Supreme Court of the United States in that case. In dealing with that question the Court used this language in the opinion in that case:

"Another question presented by appellants is whether Art. 27, Section 509, which exempts the Sunday retail sale of 'merchandise essential to, or customarily sold at, or incidental to, the operation of' bathing beaches, amusement

parks et cetera in Anne Arundel County, is unconstitutionally vague. We believe that business people of ordinary intelligence in the position of appellants' employer would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation at a nearby bathing beach or amusement park within the county. See *United States* v. *Harriss*, 347 U. S. 612, 617-618. Under these circumstances, there is no necessity to guess at the statute's meaning in order to determine what conduct it makes criminal. *Connally* v. *General Construction Co.*, 269 U. S. 385, 391."

Under the foregoing authorities it is clear that the provisions "household or other work of necessity or charity"; the provisions of Section 25 excluding sales or rental of bathing, boating and "fishing paraphernalia and equipment," and sales or rental on the premises where sports, athletic games and events or recreational facilities are located or conducted of "equipment essential to the normal use or operation of such premises for the purposes specified"; and the provisions of Section 26 excluding "operation of antique shops and novelty and souvenir shops", "transportation of the mail or any other activity in connection with the mail."; "transportation of persons or property by any present or future mode of public or private conveyance or other activity in connection with any such mode of public or private conveyance."; "operation of car-washing establishments, garages and gasoline service stations, including the sale of commodities and services customarily furnished at such garages and service stations."; "operation of grocery stores"; "professional and amateur sports, athletic contests and events, and concessions incidentally connected therewith."; and "operation of recreational, amusement, scenic, historic and educational facilities and activities in connection therewith.", as used in Sections 25 and 26 of the statute, are not so vague and uncertain as to be constitutionally invalid; on the contrary each of such provisions is sufficiently clear and definite and such that people of ordinary intelligence subject to its application can know and understand its meaning and

effect, as indicated by the court in the opinion in the *Mc-Gowan* case, and is, for that reason, a valid and effective statutory provision and does not violate any provision of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States or the provisions of Article III, Sections 10 and 14, of the Constitution of this State.

In *State* v. *Karmil Merchandising Corporation*, 158 Me. 450, 186 A. 2d 352, many of the questions involved in the case at bar were presented and resolved in favor of the validity of the Maine Sunday Closing Law and the constitutionality of that statute was upheld by the court.

The petitioners attack the constitutionality of the statute on the additional ground that its provisions are violative of the Establishment Clause and the Free Exercise Clause of the First Amendment to the Constitution of the United States and of Article III, Section 15, of the Constitution of this State. This contention is likewise without merit.

Though it is true that the first Sunday Closing Laws were instigated by religious forces for the purpose of requiring attendance at religious services in England and in the American colonies such laws have since undergone such changes in the various states of the Union that they can no longer be regarded as statutes of a religious character and presently they bear no relationship to the establishment of religion and do not prohibit the free exercise of religion, or violate any of the provisions of the First Amendment to the Constitution of the United States. The principle has long been recognized in this State that a Sunday Closing Law, enacted under the police power of the State, for the purpose of providing a day of rest for persons and to prevent the physical and moral disadvantages which result from uninterrupted labor is not a religious statute and does not infringe upon the doctrine of separation of church and state or violate the constitutional guarantee of religious freedom.

In the early case of *State* v. *Railroad Company*, 24 W. Va. 783, 49 Am. Rep. 290, which was the second review by this Court of the case of *State* v. *The Baltimore and Ohio Rail-*

*road Company,* 15 W. Va. 362, involving the constitutionality of a Sunday Closing Law then in effect in this State, Sections 16 and 17, Chapter 149, Code, 1868, this Court, in an opinion delivered by Judge Green, said: "When this case was formerly before this Court we held, that 'it was obviously not intended by this act of our Legislature to enforce the observance of the Sabbath as a religious duty. The Legislature obviously regarded it as promotive of the mental, moral, and physical well being of men that they should rest from their labors at stated intervals; and in this all experience shows they were right.' 15 W. Va. 383. The Court said further: 'It has been very generally held, that statutes more or less resembling ours were constitutional, because they did not enforce the observance of the Sabbath as a religious duty.' We concluded for this reason, that our statute was not a violation of our State Constitution and that it applied equally to individuals and to corporations." Though as contended by the petitioners, the foregoing quoted statements may be considered as dicta, they indicate clearly that this Court regarded the Sunday closing statute as secular rather than religious in character.

In the later case of *State ex rel. Smith* v. *Wertz,* 91 W. Va. 622, 114 S. E. 242, 29 A.L.R. 391, involving the validity of a municipal ordinance forbidding work and labor on the Sabbath, this Court, in discussing the basis of Sunday Observance Laws, in the opinion used this language: "From the standpoint of the lawmaker they have no reference whatever to religious obligations or duties. There may have been a time when the observance of the Sabbath day was enforced by clerical edicts, and when it was observed because of the fear of ecclesiastical condemnation. These regulations now, however, find their foundation and basis in the uniform experience of mankind teaching that it is not only advisable but necessary for the moral, mental and physical preservation of the race that those engaged in labor should periodically cease therefrom; that there should be periodic times of rest and recreation. There is, perhaps, no economic principle upon which there has been over a long period of time such uniformity of opinion. Certainly, since

the year 321 A. D., when the Emperor Constantine promulgated an edict requiring the cessation from labor on one day out of every seven, there has been uniformity in the legislation of all civilized nations upon this particular question, and we are unacquainted with anything in modern life which is contrary to the judgment of the philosophers and scientists, based, not only upon the facts of history, but upon scientific experimentation as well."

In the early case of *Raines* v. *Watson*, 2 W. Va. 371, an opinion by Judge Loomis, a circuit judge, who sat as a member of the Supreme Court of Appeals which he was permitted to do by the Constitution of 1863, contains this language:

"It never was contemplated by the law-makers to confer immunities and superior religious privileges upon those who worship on Sunday in preference to those who observe the seventh day as the Sabbath. All questions or doubts touching the morality of the transaction, so far as the statute law is concerned, at once vanish when it is remembered that our laws establish no particular religion nor religious belief. Church and State are wisely kept separate. Freedom and toleration in religion are characteristics of our State and Federal governments. (See Virginia Bill of Rights, article 16. Act for establishing religious freedom. Code, chapter 76, pages 408 to 410. Constitution of United States, 1 article of amendments.)

"Wisdom and experience teach us that man should refrain from labor at least one day in seven, and it is obvious there would be great advantages in having the day of rest fixed at regular periods. To fix such a day and to enjoin cessation from labor thereon is undoubtedly within the scope of legislative authority, whether the day selected be the *first* or any other day of the week. The legislature has wisely selected the Christian Sabbath to be observed as a day of rest, not for the purpose of recognizing that day as being sacred above other days, but because the religious feelings and belief of the majority of our people would lead them to observe and keep it as a day of rest independently

of legislative action. From 'principles of sound policy' then, a day has been by law appointed on which free persons are required to refrain from laboring at any trade or calling, * * * ."

In the recent case of *McGowan* v. *Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393, in which the constitutionality of a Maryland Sunday Closing Law, Article 27, Maryland Annotated Code, was assailed on numerous grounds, one of which was that it was violative of the First Amendment to the Constitution of the United States, the Supreme Court of the United States, in denying that contention, used this pertinent language:

"In light of the evolution of our Sunday Closing Laws through the centuries, and of their more or less recent emphasis upon secular considerations, it is not difficult to discern that as presently written and administered, most of them, at least, are of a secular rather than of a religious character, and that presently they bear no relationship to establishment of religion as those words are used in the Constitution of the United States.

"Throughout this century and longer, both the federal and state governments have oriented their activities very largely toward improvement of the health, safety, recreation and general well-being of our citizens. Numerous laws affecting public health, safety factors in industry, laws affecting hours and conditions of labor of women and children, week-end diversion at parks and beaches, and cultural activities of various kinds, now point the way toward the good life for all. Sunday Closing Laws, like those before us, have become part and parcel of this great governmental concern wholly apart from their original purposes or connotations. The present purpose and effect of most of them is to provide a uniform day of rest for all citizens; the fact that this day is Sunday, a day of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals. To say that the States cannot prescribe Sunday as a day of rest for these purposes solely because centuries ago such laws had their genesis in reli-

gion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State."

To the same effect are recent decisions of the Supreme Court of the United States in *Gallagher* v. *Crown Kosher Super Market of Massachusetts, Inc.,* 366 U. S. 617, 81 S. Ct. 1122, 6 L. Ed. 2d 536; *Two Guys From Harrison-Allentown, Inc.* v. *McGinley,* 366 U. S. 582, 81 S. Ct. 1135, 6 L. Ed. 2d 551; *Braunfeld* v. *Brown,* 366 U. S. 599, 81 S. Ct. 1144, 6 L. Ed. 2d 563.

In *Mandell* v. *Haddon,* 202 Va. 979, 121 S. E. 2d 516, the Sunday Closing Law of Virginia, which as already indicated closely resembles the Sunday Closing Law here under consideration, was considered by the court to be a secular law and not a religious law and does not infringe upon the constitutional guarantee of religious liberty under the First Amendment to the Constitution of the United States which is made applicable to the States by the Fourteenth Amendment.

The petitioners, and particularly the petitioner James Najar, a member of the Druse faith, and the petitioner Frank Rushden, a member of the Moslem faith, and who as such observe Friday rather than Sunday as the Sabbath, contend that though the statute provides in Section 27 that the penalties imposed by that section shall not be incurred by any person who conscientiously believes that Saturday ought to be observed as a Sabbath and actually refrains from all secular business and labor on that day if he does not compel an apprentice or servant or employee, not of his belief, to do secular work or business on a Sunday, it does not provide such exemption for members of the Druse or Moslem faith who believe that Friday should be observed as a Sabbath, and in consequence operates as an illegal discrimination against a member of either of those faiths and renders the statute unconstitutional, null and void. Substantially the same contention was advanced in the recent case of *Braunfeld* v. *Brown,* 366 U. S. 599, 81 S. Ct. 1144, 6 L. Ed 2d 563, and rejected by the Supreme Court of the United

States. In that case the plaintiffs and appellants, who were merchants engaged in the retail sale of clothing and home furnishings in Philadelphia, Pennsylvania, and who were members of the Orthodox Jewish faith which required the closing of their business and total abstinence from any manner of work from nightfall each Friday until nightfall each Saturday, instituted a suit to enjoin enforcement of a 1959 Pennsylvania criminal statute which forbade the retail sale on Sunday of those commodities and other specified articles of trade. They contended that the statute violated the Equal Protection Clause of the Fourteenth Amendment and constituted a law respecting an establishment of religion, that it interfered with the free exercise of their religion by imposing serious economic disadvantages upon them, if they adhered to the observance of their Sabbath, and that it would also operate as a hinderance to the Orthodox Jewish faith in gaining new members. In sustaining the validity of the statute the court held that it did not violate the Equal Protection Clause of the Fourteenth Amendment, or constitute a law respecting an establishment of religion, or prohibit the free exercise of religion within the meaning of the First Amendment which is made applicable to the States by the Fourteenth Amendment. The opinion of the Chief Justice in which three justices concurred contains these pronouncements:

"Concededly, appellants and all other persons who wish to work on Sunday will be burdened economically by the State's day of rest mandate; and appellants point out that their religion requires them to refrain from work on Saturday as well. Our inquiry then is whether, in these circumstances, the First and Fourteenth Amendments forbid application of the Sunday Closing Law to appellants.

"Certain aspects of religious exercise cannot, in any way, be restricted or burdened by either federal or state legislation. Compulsion by law of the acceptance of any creed or the practice of any form of worship is strictly forbidden. The freedom to hold religious beliefs and opinions is absolute. *Cantwell* v. *Connecticut,* 310 U. S. 296, 303; *Reynolds* v. *United States,* 98 U. S. 145, 166. Thus, in *West Virginia*

*State Board of Education* v. *Barnette,* 319 U. S. 624, this Court held that state action compelling school children to salute the flag, on pain of expulsion from public school, was contrary to the First and Fourteenth Amendments when applied to those students whose religious beliefs forbade saluting a flag. But this is not the case at bar; the statute before us does not make criminal the holding of any religious belief or opinion, nor does it force anyone to embrace any religious belief or to say or believe anything in conflict with his religious tenets.

"However, the freedom to act, even when the action is in accord with one's religious convictions, is not totally free from legislative restrictions. *Cantwell* v. *Connecticut, supra,* at pp. 303–304, 306. As pointed out in *Reynolds* v. *United States, supra,* at p. 164, legislative power over mere opinion is forbidden but it may reach people's actions when they are found to be in violation of important social duties or subversive of good order, even when the actions are demanded by one's religion. * * * .

"But * * * the statute at bar does not make unlawful any religious practices of appellants; the Sunday law simply regulates a secular activity and, as applied to appellants, operates so as to make the practice of their religious beliefs more expensive. Furthermore, the law's effect does not inconvenience all members of the Orthodox Jewish faith but only those who believe it necessary to work on Sunday. And even these are not faced with as serious a choice as forsaking their religious practices or subjecting themselves to criminal prosecution. Fully recognizing that the alternatives open to appellants and others similarly situated—retaining their present occupations and incurring economic disadvantage or engaging in some other commercial activity which does not call, for either Saturday or Sunday labor—may well result in some financial sacrifice in order to observe their religious beliefs, still the option is wholly different than when the legislation attempts to make a religious practice itself unlawful.

"To strike down, without the most critical scrutiny, legislation which imposes only an indirect burden on the ex-

ercise of religion, i.e., legislation which does not make unlawful the religious practice itself, would radically restrict the operating latitude of the legislature. Statutes which tax income and limit the amount which may be deducted for religious contributions impose an indirect economic burden on the observance of the religion of the citizen whose religion requires him to donate a greater amount to his church; statutes which require the courts to be closed on Saturday and Sunday impose a similar indirect burden on the observance of the religion of the trial lawyer whose religion requires him to rest on a weekday. The list of legislation of this nature is nearly limitless.

"Of course, to hold unassailable all legislation regulating conduct which imposes solely an indirect burden on the observance of religion would be a gross oversimplification. If the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect. But if the State regulates conduct by enacting a general law within its power, the purpose and effect of which is to advance the State's secular goals, the statute is valid despite its indirect burden on religious observance unless the State may accomplish its purpose by means which do not impose such a burden. See *Cantwell* v. *Connecticut, supra,* at pp. 304-305.

"As we pointed out in *McGowan* v. *Maryland, supra,* at pp. 444-445, we cannot find a State without power to provide a weekly respite from all labor and, at the same time, to set one day of the week apart from the others as a day of rest, repose, recreation and tranquillity—a day when the hectic tempo of everyday existence ceases and a more pleasant atmosphere is created, a day which all members of the family and community have the opportunity to spend and enjoy together, a day on which people may visit friends and relatives who are not available during working days, a day when the weekly laborer may best regenerate himself. This is particularly true in this day and age of increasing state concern with public welfare legislation.

In view of the foregoing, this Court holds that the failure of the statute to provide an exemption for persons of the Druse or Moslem faith or any other faith, whose members conscientiously observe Friday as the Sabbath, even though it provides such exemption for members of a faith which observes Saturday as a Sabbath, does not violate the provisions of the First Amendment to the Constitution of the United States or prohibit the free exercise of religion of any of the petitioners, does not violate the provisions of Article III, Section 15, of the Constitution of this State and does not render the statute, or any of its provisions, constitutionally invalid.

Contrary to the contention of the petitioners, the present Sunday Closing Law, in providing that the sales of many designated articles are not works of necessity or charity and in excluding certain specified articles and activities from the ban of the statute, does not violate the Due Process Clause or the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. As already indicated the provisions listing the prohibited commodities and enumerating certain commodities excluded from the ban of the statute closely resemble the commodities specifically prohibited and other commodities expressly permitted by the Virginia statute, the constitutionality of which was similarly challenged but was upheld by the Supreme Court of that State in *Mandell* v. *Haddon*, 202 Va. 979, 121 S. E. 2d 516. The same type of classifications, relating to the same kinds of commodities and transactions, as those contained in the statute here involved, were approved and held to be constitutionally valid in that case. In the opinion in that case the court used this pertinent language:

"The amended Sunday law contains the same general prohibition against working or transacting business on Sunday, except in household or other work of necessity or charity, found in the old statute. It then declares as a matter of law that the exemption for 'works of necessity or charity' shall not include the sale of thirty specific types of commodities, none of which appears as being necessary to be sold on Sunday in order to promote health, safety and the gen-

eral welfare, with six parenthetical 'exclusions.' The prohibition against the sale of the specified commodities is inclusive enough to close a great majority of stores while leaving open restaurants, drug stores, recreation centers and filling stations, which is in accordance with the general purpose and object of the law.

"Each of the 'exclusions' qualifies an otherwise broad generic category. They amount to no more than a recognition of the legislature that the broad language used in listing the prohibited commodities would include certain articles the sale of which it did not consider as a matter of law to be contrary to the object and purpose the legislation sought to accomplish."

The necessity for and the reasonableness of a classification are primarily questions for the legislature and if any state of facts can be reasonably conceived to support the classification such state of facts at the time of the enactment of a statute must be assumed. The presumption is that the classification is reasonable and appropriate and that the act is constitutional unless illegality appears on its face. *Mandell* v. *Haddon*, 202 Va. 979, 121 S. E. 2d 516. The Equal Protection Clause of the Fourteenth Amendment does not deprive the States of the authority to make a reasonable classification in enacting statutes under the police power, provided the classification is based on some real and substantial relation to the objects sought to be accomplished by the legislation, and a person who assails the classification has the burden of showing that it is essentially arbitrary and unreasonable. *Mandell* v. *Haddon*, 202 Va. 979, 121 S. E. 2d 516; *Martin's Ex'rs*. v. *Commonwealth*, 126 Va. 603, 102 S. E. 77; *McGowan* v. *Maryland*, 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393; *Gallagher* v. *Crown Kosher Super Market of Massachusetts, Inc.*, 366 U. S. 617, 81 S. Ct. 1122, 6 L. Ed. 2d 536; *Braunfeld* v. *Brown*, 366 U. S. 599, 81 S. Ct. 1144, 6 L. Ed. 2d 563; *Two Guys From Harrison-Allentown, Inc.* v. *McGinley*, 366 U. S. 582, 81 S. Ct. 1135, 6 L. Ed. 2d 551. The Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States does not preclude the resort to classification for the purpose

of legislation if the classification is reasonable, is based on pertinent and real differences, and has as its object a purpose germane to the legislation. *Tweel* v. *West Virginia Racing Commission,* 138 W. Va. 531, 76 S. E. 2d 874, appeal dismissed, 346 U. S. 869, 74 S. Ct. 123, 98 L. Ed. 379.

In *McGowan* v. *Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393, the Sunday Closing Law of that State generally prohibited the sale on Sunday of all merchandise except the retail sale of certain designated articles and excepted from the prohibition of the statute the retail sale in a particular county of that State of foodstuffs, automobile and boating accessories, flowers, toilet goods, hospital supplies and souvenirs, and exempted any retail establishment in that county which employed not more than one person other than the owner. The court held that the statute did not violate the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment, that the classification made by the statute could not be considered to be without rational or substantial relation to the objects of the legislation so as to exceed the wide discretion permitted the states in enacting laws which affect some groups of citizens differently from others, that the provisions of the statute which permitted only certain retailers in one county of a state to sell merchandise essential to, or customarily sold at, or incidental to, the operation of bathing beaches, amusement parks and other like places, did not discriminate invidiously against retailers in other counties of the state, and that the statute did not violate the Equal Protection Clause of the Fourteenth Amendment in permitting only certain merchants in one county of the state to sell merchandise customarily sold at certain designated places while forbidding its sale by other vendors. In the opinion, in discussing the power of the legislature of a state to establish classifications in the enactment of laws under the police power, the court said: "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is of-

fended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discretion will not be set aside if any state of facts reasonably may be conceived to justify it. See *Kotch* v. *Board of River Port Pilot Comm'rs,* 330 U. S. 552; *Metropolitan Casualty Ins. Co.* v. *Brownell,* 294 U. S. 580; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61; *Atchison, T. & S. F. R. Co.* v. *Matthews,* 174 U. S. 96."

In *Williamson* v. *Lee Optical of Oklahoma, Inc.,* 348 U. S. 483, 74 S. Ct. 461, 99 L. Ed. 563, the court said: "The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. *Tigner* v. *Texas,* 310 U. S. 141. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Semler* v. *Dental Examiners,* 294 U. S. 608. The legislature may select one phase of one field and apply a remedy there, neglecting the others. *A. F. of L.* v. *American Sash Co.,* 335 U. S. 538. The prohibition of the Equal Protection Clause goes no further than the *invidious* discrimination." (Emphasis supplied)

Under the foregoing authorities this Court holds that the classifications provided by Sections 25 and 26 of the Sunday Closing Law of this State which prohibit the sale of certain designated commodities and permit the sale of other designated commodities and the participation in certain specified activities are not unreasonable, arbitrary or capricious and are not constitutionally invalid as violative of the Due Process Clause or the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

The Sunday Closing Law here under consideration, contrary to the contention of the petitioners, does not violate Article VI, Section 39 of the Constitution of this State which

provides that in no case shall a special act be passed where a general law would be proper and can be made applicable to the case or in any other case in which the courts have jurisdiction and are competent to give the relief sought. The constitutional requirement that a law be general does not imply that it must be uniform in its operation and effect in the full sense of its terms. *State* v. *Harden,* 62 W. Va. 313, 58 S. E. 715, 60 S. E. 394. If a law operates alike on all persons and property similarly situated, it is not subject to the objection of special legislation or class legislation and does not violate the Equal Protection Clause of the Fourteenth Amendment. *Bent* v. *Weaver,* 108 W. Va. 299, 150 S. E. 738. The well settled general rule is that in cases of doubt the intent of the Legislature not to exceed its constitutional powers is to be presumed and the courts are required to favor the construction which would consider the statute to be a general law. *State ex rel. Rickey* v. *Sims,* 122 W. Va. 29, 7 S. E. 2d 54. It has been said that a general law in its simplest form embraces all persons and places within the State but varying circumstances often render it impossible to apply the same rule everywhere and to everybody. In *State ex rel. Dieringer* v. *Bachman,* 131 W. Va. 562, 48 S. E. 2d 420, the opinion contains this language: "If the statute passed by the Legislature applies throughout the State and to all persons within a specified class, and such classification is rational and is not arbitrary or unreasonable, the statute is general." The classifications which it provides must not be purely arbitrary but must be natural and reasonable and appropriate to the particular case involved. *Martin's Ex'rs* v. *Commonwealth,* 126 Va. 603, 102 S. E. 77. It is clear from the consideration of its provisions that the present Sunday Closing Law is a general law and not such special law as is interdicted by the foregoing constitutional provision. As pointed out by the Supreme Court of Appeals of Virginia in its consideration of a substantially similar Sunday Closing Law in the frequently cited case of *Mandell* v. *Haddon,* 202 Va. 979, 121 S. E. 2d 516, the present Sunday Closing Law affects all persons similarly situated or engaged in the same business throughout the State and it does not show on its face that

the classifications unreasonably or arbitrarily separate persons, places or things in violation of the constitutional prohibition against special legislation. Constitutional prohibitions against special legislation do not prevent classification but the classification must bear a reasonable and substantial relation to the object sought to be accomplished by the legislation. In consequence, the present statute must be considered to be a general law as distinguished from a special law and its enactment does not contravene any of the provisions of Article VI, Section 39, of the Constitution of this State.

There is no merit in the contention of the petitioners that the present statute requires excessive fines to be imposed or cruel or unusual punishment to be inflicted in fixing a fine of not less than $25.00 or more than $100.00 upon conviction of a first offense, a fine of not less than $250.00 or more than $500.00 and, in the discretion of the court, a jail sentence for a period not to exceed thirty days upon conviction of a second offense committed within one year of the first offense, and a fine of not less than $500.00 or more than $1,000.00 and, in the discretion of the court, a jail sentence for a period not to exceed six months for a third or any subsequent offense committed within two years of the previous offense. The Sunday Closing Laws, the constitutionality of which was upheld by the Supreme Court of the United States in *McGowan* v. *Maryland*, 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393; *Braunfeld* v. *Brown*, 366 U. S. 599, 81 S. Ct. 1144, 6 L. Ed. 2d 563, and *Two Guys From Harrison-Allentown, Inc.* v. *McGinley*, 366 U. S. 582, 81 S. Ct. 1135, 6 L. Ed. 2d 551, respectively, fixed a specific penalty upon conviction of a first offense and an increased penalty upon conviction of subsequent offenses. The Maryland statute considered in the *McGowan* case required a fine of not less than $20.00 or more than $50.00 upon conviction of a first offense and a fine of not less than $50.00 or more than $500.00 and a jail sentence of not less than ten days or more than thirty days and the revocation of an existing license and the refusal to grant a future license within a period of twelve months upon conviction of a

second offense; and the Pennsylvania statute considered in the *Braunfeld* and the *Two Guys from Harrison-Allentown, Inc.* cases required a fine not to exceed $100.00 upon conviction of a first offense and a fine not to exceed $200.00 or a jail sentence not to exceed thirty days in default of the payment of such fine upon conviction of a second or any subsequent offense committed within one year from the conviction of a first offense. Though the constitutionality of the statutes involved in each of those cases was not directly challenged on the ground that the punishments prescribed were cruel and unusual, the absence of any issue of that character indicates that the validity of the statutes in that particular was recognized and conceded by all parties to the litigation.

The constitutional inhibition against cruel and unusual punishment was designed to prevent the former barbarous practices under the common law in inflicting torture on unfortunate criminals, *State* v. *Painter,* 135 W. Va. 106, 63 S. E. 2d 86. The Legislature has the power to create and define crimes and fix the punishment subject only to the limitation that such punishment shall not be cruel, or unusual, or disporportionate to the offense. *State* v. *Woodward,* 68 W. Va. 66, 69 S. E. 385, 30 L.R.A., N. S., 1004; *State* v. *Wamsley,* 68 W. Va. 103, 69 S. E. 475; *State* v. *Wamsley,* 68 W. Va. 104, 69 S. E. 476. In each of the two cases of *State* v. *Wamsley,* this Court held that sentences of fines of $50.00 and $75.00 and imprisonment in the county jail for six months and revocation of a license to sell spirituous liquors imposed upon the same defendant for violation of a statute which prohibited a saloon-keeper from obstructing from plain view from the street, on a Sunday, by means of screens on the windows, the bar and other parts of the room where spirituous liquors were sold, did not constitute excessive fines or cruel and unusual punishment. The punishment imposed in those cases is substantially greater than any of the punishments imposed upon a conviction for either a first offense or a second offense in violation of the Sunday Closing Law. In discussing the meaning of the phrase "cruel and unusual"

as applied to punishment, Judge Brannon in *State* v. *Woodward*, 68 W. Va. 66, 69 S. E. 385, 30 L.R.A., N. S., 1004, indicates that to constitute cruel and unusual punishment, the punishment interdicted by the constitutional provision must impose a fine so excessive and inflict imprisonment for such a lengthy period of time as would shock the feelings of humanity, conscience, justice and mercy in any particular case. Certain it is that none of the punishments provided by the Sunday Closing Law transcends that standard. The punishment of fine, or fine and imprisonment, provided by Section 27, Article 10, Chapter 61, Code, 1931, as amended by Chapter 12, Acts of the Legislature, 1964, Regular Session, upon conviction of a first offense, a second offense, or a third or subsequent offense, does not violate the provisions of Article III, Section 5, of the Constitution of this State that excessive fines shall not be imposed and cruel and unusual punishment shall not be inflicted.

The petitioners also attack the constitutionality of the present statute on the ground that, though it permits the sale of magazines, books, periodicals and newspapers, it prohibits any report of news and the publication, delivery and distribution of such printed matter, on Sunday, in violation of the provisions of the First Amendment to the Constitution of the United States and the provisions of Article III, Section 7, of the Constitution of this State which guarantee freedom of speech and of the press, and that in permitting the operation of a retail outlet for the exclusive sale of products of an industry located in the State, and in prohibiting the sale within the State of products of an industry located outside the State, it imposes a burden on interstate commerce, in violation of the Commerce Clause, Article I, Section 8, of the Constitution of the United States. It does not appear, and there is no showing anywhere in the record, that any of the petitioners is affected by any of those provisions of the statute or that any such provision of the statute in any wise applies to any of them or affects or impairs any personal or property right of any of the petitioners. For that reason none

of the petitioners is entitled to raise either of those questions or to question the constitutionality of the statute on either of those grounds; and those questions and other questions involving the constitutionality of the statute with respect to its terms and provisions which do not apply to any of the petitioners or affect or impair the right of any of them are not considered or determined in these proceedings. The principle is well settled, by the decisions of the Supreme Court of the United States and of this Court, that constitutional questions, and particularly a question involving the constitutionality of a statute, will not be considered in a judicial proceeding unless such question is raised by an interested party and its determination is necessary to a decision of the case. *McGowan* v. *Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393; *United States* v. *Raines,* 362 U. S. 17, 80 S. Ct. 519, 4 L. Ed. 2d 524; *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450, 65 S. Ct. 1374, 89 L. Ed. 1725; *Turpin* v. *Lemon,* 187 U. S. 51, 23 S. Ct. 20, 47 L. Ed. 70; *State* v. *Huber,* 129 W. Va. 198, 40 S. E. 2d 11, 168 A.L.R. 808; *Ice* v. *County Court of Putnam County,* 91 W. Va. 272, 112 S. E. 495; *Anderson* v. *Bowen,* 78 W. Va. 559, 89 S. E. 677; *State ex rel. Dillon* v. *County Court,* 60 W. Va. 339, 55 S. E. 382, affirmed, 208 U. S. 192, 28 S. Ct. 275, 52 L. Ed. 450; *Shephard* v. *Wheeling,* 30 W. Va. 479, 4 S. E. 635. In *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450, 65 S. Ct. 1374, 89 L. Ed. 1725, the opinion contains this statement: "Only those to whom a statute applies and who are adversely affected by it can draw in question its constitutional validity in a declaratory judgment proceeding as in any other." In *State ex rel. Dillon* v. *County Court,* 60 W. Va. 339, 55 S. E. 382, affirmed, 208 U. S. 192, 28 S. Ct. 275, 52 L. Ed. 450, this Court held in point 8 of the syllabus that "Courts will not hear objections to laws, on the ground of unconstitutionality, from persons whose rights are not affected by them." In the opinion in that case this Court quoted with approval these statements from 8 Cyc. 787: "It is a fairly established principle of law that no one can be allowed to attack a

statute as unconstitutional who has no interest in it and is not affected by its provisions. This rule applies to all cases both at law and in equity, and is equally applicable in both civil and criminal proceedings. All constitutional inhibitions against the taking of private property without due process of law and all constitutional guaranties of equal rights and privileges are for the benefit of those persons only whose rights are affected, and cannot be taken advantage of by any other persons."

For the reasons stated, the writ prayed for in each of the petitions is denied.

*Writs denied.*